269 B.R. 392 (2001)
In re Jeffrey Charles MACK, Debtor.
Dwight R.J. Lindquist, Trustee for the Chapter 7 Bankruptcy Estate of Jeffrey Charles Mack, Plaintiff,
v.
Jeffrey Charles Mack, individually, Jeffrey C. Mack and Dave F. Senger, as Trustees of the Jeffrey C. Mack Charitable Remainder Unitrust dated January 17, 1997, Cyndi-Lee Mack, Kara Mack, Erica Mack, and The Minneapolis Foundation, Defendants.
Bankruptcy No. 01-40629. Adversary No. 01-4183.
United States Bankruptcy Court, D. Minnesota.
November 2, 2001.
*393 Patrick B. Hennessy, Esq., Minneapolis.
Cass S. Weil, Esq., Moss & Barnett, Minneapolis.
Ted Cheesebrough, Esq., Faegre & Benson LLP, Minneapolis.
Ralph V. Mitchell, Esq., Duckson, Carlson, Bassinger, Minneapolis.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER FOR JUDGMENT
NANCY C. DREHER, Bankruptcy Judge.
The above-entitled matter came on for trial before the undersigned on August 13, *394 2001. Appearances were as follows: Patrick Hennessy for the Plaintiff ("Trustee"); Cass Weil for Defendant Jeffrey Charles Mack, individually ("Debtor"); Ted Cheesebrough for The Minneapolis Foundation; and Ralph Mitchell for the remaining Defendants. The court has heard the evidence and makes the following:

FINDINGS OF FACTS
A. THE PARTIES
Trustee is the Chapter 7 Trustee in the bankruptcy case of Jeffrey Charles Mack, Debtor. Debtor is settlor of the Jeffrey C. Mack Charitable Remainder Unitrust dated January 17, 1997 (the "CRUT"). Debtor and Dave F. Senger, his business lawyer, are the Trustees. Defendant Cyndi-Lee Mack is the spouse of Debtor, and Defendants Kara Mack and Erica Mack are the adult children of the Debtor. The Defendant, The Minneapolis Foundation, is a Minnesota nonprofit corporation.
All defendants are and were at all significant times residents of the State of Minnesota.
B. THE ISSUES
Debtor is named as the income beneficiary of the CRUT for his life. This case requires me to determine whether Debtor's income interest in the CRUT, which he self-settled on January 17, 1997, as well as his rights as an income beneficiary to remove and replace trustees and to amend the trust to protect its tax benefit status, are property of the bankruptcy estate. The Trustee has, by agreement of the parties, withdrawn all other claims in this case. Specifically, the Trustee does not seek an order finding the trust itself void and awarding the Trustee the assets of the trust. Further, the Trustee does not seek avoidance and preservation of the future income interests of the Debtor's spouse and two adult children. Moreover, the Trustee does not seek a determination that Debtor's power, as settlor of the trust, to revoke the income interests of the spouse and children, exercisable only in his last will and testament, is property of the bankruptcy estate. Thus, the only issues before me are 1) who gets the income the trust is required by law, and by its terms, to distribute annually to the Debtor over Debtor's life and 2) whether the Trustee can step into the Debtor's shoes as income beneficiary and control who manages the trust assets.
The answer to these questions requires an analysis of the CRUT itself, as well as the law of CRUTs, both state and federal.
C. THE CHARITABLE REMAINDER TRUST ("CRUT")
Simplistically speaking, a CRUT is a legal device pursuant to which a taxpayer can transfer assets to a trust (in this case a high value/low basis asset), take an immediate charitable tax deduction on his personal income taxes, insure himself a guaranteed stream of income generated by the trust assets (on which he must pay income taxes), defer the taxes on the transactions by and accumulations in the trust, control the manner in which trust assets are invested, and control who gets the remainder interest in the trust assets when the taxpayer and named future income beneficiaries die. The only hitch is that at some point down the line, when the settlor and all individuals whom he has named to follow him as income beneficiaries leave this earth, what's left in the trust must go to a qualified charitable organization. To make sure that this happens, in order to qualify for favorable tax treatment, a CRUT must be irrevocable and is subject to rigid rules of operation. It goes without saying that a CRUT is a tax planning tool for the rich. CRUTs are legitimate and, indeed, sound *395 in the sense that a charity gets something. They are also extremely attractive to wealthy people, like Debtor used to be, who want to defer or avoid taxes altogether while maintaining control of what happens to their money.
Debtor was the settlor of the CRUT and also was the initial Trustee. Debtor funded the CRUT by contributing 100,000 shares of common stock of Olympic Financial, Ltd. ("Olympic"). No other property has been contributed to the CRUT by Debtor or any other person. The Olympic stock was sold by the CRUT in January and February, 1997 for $1,655,188.60. Debtor's tax basis in the contributed Olympic stock was $10,000.00.
Debtor created the CRUT as part of a financial planning package recommended to him by professionals. At the time, virtually all of his net worth was tied up in Olympic stock. He had formed, successfully managed and then sold the company. He needed to diversify. The creation of the CRUT allowed him to 1) escape capital gains taxes on the CRUT's sale of Olympic stock; 2) take an immediate charitable tax deduction on his 1997 income taxes; 3) diversify his portfolio; 4) guarantee a steady stream of income for himself and his spouse and children for their life; and 5) in what must be viewed as an after-thought, give a gift to charity which would not vest for decades.[1]
The parties agree that the Debtor had significant tax reasons for creation of the CRUT. They further agree that, at the time, the creation of the CRUT was a legitimate tax deferral device, even though currently the CRUT would not qualify for favorable tax treatment because it provides so little to charity. Debtor saved several hundreds of thousands of dollars in capital gains taxes he would otherwise have paid had he sold Olympic stock in his own name. He also took a charitable deduction in 1997 of $27,209, which is the value of the charitable remainder interest calculated according to Internal Revenue Service guidelines. The value of the remainder interest awarded to charity was less than 2 percent of the value of the assets contributed to the trust.[2]
Debtor was not insolvent, as that term is defined in 11 U.S.C. § 101(32),[3] before or immediately after the transfer of the Olympic stock to the CRUT, even if the Debtor's interest in the CRUT was not included as an asset on his balance sheet. Indeed, at the time, his net worth was in the many millions of dollars.
The Trust Declaration states that it was intended to comply with section 4 of Revenue Procedure 90-30, 1990-1 C.B. 534, and section 664(d)(2) of the Internal Revenue *396 Code. I.R.C. § 664(d)(2). The Debtor retained the right to receive all distributions of a "Unitrust Amount," as defined by the Trust Declaration, during his lifetime. The Unitrust Amount, further defined in paragraph 2.2 of the Trust Declaration, is, with certain adjustments, equal to 7 percent of the net fair market value of the CRUT assets each year, based on a valuation on the first business day of the taxable year of the CRUT. In accordance with the terms of the CRUT, after Debtor's death, the Unitrust Amount is to be distributed to Cyndi-Lee Mack, if she survived the Debtor, for her lifetime, and then to Kara Mack and Erica Mack for their lifetimes. Upon the expiration of all of the income interests, the remainder interest in the CRUT is to be distributed to a charitable organization, presently designated to be The Minneapolis Foundation. Distribution of the Unitrust Amount, in the amounts and at the times provided for by the Trust Declaration (quarterly), are mandatory.
Debtor, in his capacity as settlor of the trust also retained the right, in his last will and testament, to revoke the interests of Cyndi-Lee Mack, Kara Mack, and/or Erica Mack in the CRUT. He also retained the right, as the income recipient of the CRUT, to remove or appoint any trustee of the CRUT with or without cause. Finally, the Trust Declaration allowed Debtor to amend, alter or revoke the designation of The Minneapolis Foundation as the charitable organization which would receive the charitable remainder.
The CRUT provided that the Trustee would have all powers designated in the instrument itself as well as the powers set forth in Minnesota Statute section 501B.81. The Trustee retained the power to invest and reinvest trust assets, subject to compliance with section 664 of the Internal Revenue Code and the Treasury Regulations promulgated thereunder. The Trust Declaration specifically provided that it was irrevocable, except that the Trustee retained the right to amend the Trust Declaration so as to bring it into compliance with section 664 and to revoke the charitable remainder beneficiary designation as referenced above.
The Trust Declaration also provided that it was to be interpreted in accordance with Minnesota law, except that federal law would control if the two were in conflict. Finally, and importantly for our purposes, Article 18 of the CRUT provided:
The interest of a beneficiary in this trust shall not be subject to the claims of any creditor, any spouse for alimony or support, or others, or to legal process, and may not be voluntarily or involuntarily encumbered or alienated, other than by assignment by all recipients (both current and contingent) of the interests defined in Article 2 to the Qualified Organizations designated in or in accordance with Article 3.
Shortly after the sale of the Olympic stock, Debtor decided to get into a new business. As Trustee he arranged to have the CRUT invest over $700,000 in his new company, Emerald First Financial, a Delaware limited liability company engaged in a high tech internet-based business. As arranged by himself and his financial planner, Debtor, not the CRUT, held the controlling voting interest in Emerald First Financial. The CRUT also invested, at Debtor's direction, in a mortgage on real estate owned by friends. Pursuant to advice from a financial planner, the CRUT also invested in certain publicly traded equities. Emerald First Financial failed and, accordingly, the CRUT has performed poorly. The trust assets were valued at $1,655,188.60 as of December 31, 1997; $2,171,429 as of December 31, 1998; $2,093,038 as of December 31, 1999; and *397 $1,129,505 as of December 31, 2000. The CRUT distributed the following Unitrust Amounts to Debtor: 1997, $117,130; 1998, $124,029; 1999, $147,564; and 2000, $146,513.
The Trust and the Debtor utilized the accounting firm of Lurie, Besikof, Lapidus & Company LLP and Douglas R. Wagman, CPA to compute the Unitrust Amount each year. For calendar years 1999, 2000 and 2001 the CRUT held units of Class A and Class B membership in Emerald First Financial, which units did not have an objectively and readily ascertainable fair market value. On March 16, 1999, Mr. Wagman computed the 1999 Unitrust Amount at $152,000.00,[4] utilizing a $714,500.00 value for the Emerald First Financial units as of December 31, 1998, provided by Mr. Senger, which value amounted to about 35% of the CRUT's portfolio. On March 23, 2000 Mr. Wagman computed the 2000 Unitrust Amount at $146,512.66, utilizing a value, as of December 31, 1999, of $714,500 for the Emerald First Financial units owned by the CRUT. By March 14, 2001, Mr. Wagman computed the Unitrust Amount for 2001 to be $79,065.35, based on a CRUT asset value as of December 31, 2000, of $1,129,505.00. In calculating the value of the Unitrust Amount for 2001 Mr. Wagman placed no value on the Emerald First Financial Units. The CRUT's investment in Emerald First Financial was worthless. In less than three years, the CRUT lost all of the money it had invested in Emerald First Financial and its asset value had declined from around $1.7 million in 1997 to about $1.1 million in 2001.
D. POSTPETITION PAYMENTS
Debtor filed his bankruptcy case on February 16, 2001. By this time Debtor was insolvent. The Debtor's fortunes had crashed along with those of Emerald First Financial. On March 22, 2001, the Trustee, through his counsel, made demand upon Debtor and Debtor's counsel for turnover of any payments from the CRUT distributed to Debtor after the date of filing this bankruptcy case or for escrow of the same pending resolution of ownership.
On March 30, 2001, and June 30, 2001, the CRUT distributed payments of the Unitrust Amount to Debtor, each payment in the amount of $19,744.29. Debtor has retained such funds and has refused to turn over such funds, or any part thereof, to the Trustee, asserting such payments are not property of the bankruptcy estate.[5]
Accordingly, the Trustee commenced this action seeking a determination of the bankruptcy estate's right in the CRUT.
E. CONCLUSION
In conclusion, the CRUT was wholly self-settled by Debtor and funded exclusively with assets from the Debtor's Olympic stock. No other property has been contributed to the trust. Debtor retained a lifetime interest in the CRUT to receive the Unitrust Amount and the distributions of the Unitrust Amount are nondiscretionary. The CRUT, by its terms, was formed to qualify as a CRUT within the provisions of section 664 of the Internal Revenue Code and the related regulations. The CRUT is a Minnesota trust and Article 12 of the CRUT provides that Minnesota law shall govern its validity and interpretation. The CRUT further provides that the requirements *398 of section 664 and the regulations promulgated thereunder shall also apply in construing the trust and that where state and federal law conflict, federal law controls.

CONCLUSIONS OF LAW
A. JURISDICTION
This court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a). This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(A), (E), (H) and (O). Venue is proper under 28 U.S.C. § 1409(a).
All defendants were served and appeared in this matter. This court has personal jurisdiction over all parties in this adversary proceeding. Pursuant to Minnesota Statute section 501B.41, subd. 2, the Minnesota Attorney general is bound by the determinations of this court in this adversary proceeding, having been duly served with the Summons and Complaint and having not participated further.
B. PROPERTY OF THE BANKRUPTCY ESTATE
Section 541(a) of the Bankruptcy Code provides, in relevant part, that property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case. . . ." 11 U.S.C. § 541(a). The sweep of this section is quite broad. All property interests of the Debtor, with narrow exceptions defined in section 541, are included as property of the bankruptcy estate. See United States v. Whiting Pools, Inc., 462 U.S. 198, 205-206, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983); Humphrey v. Buckley (In re Swanson), 873 F.2d 1121, 1122 (8th Cir.1989); Iannacone v. Trustees of Pillsbury Co. Stock Purchase & Inv. Plan (In re Hansen), 84 B.R. 598, 600 (Bankr. D.Minn.1987). Debtor's income interest in the CRUT is clearly a property interest encompassed by the broad scope of section 541(a).
The breadth of section 541(a) is further expanded by section 541(c)(1), which invalidates many contractual restrictions on transfer of the Debtor's interest as well as restrictions provided by other applicable law. Section 541(c)(1)(A) provides:
except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law 
(A) That restricts or conditions transfer of such interest by the debtor. . . .
11 U.S.C. § 541(c)(1)(A).
Section 541(c)(2) provides a narrow exception to the rule of section 541(c)(1), and is applicable only to beneficial interests in a trust. Section 541(c)(2) provides:
A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.
11 U.S.C. § 541(c)(2).
As previously noted, Article 18 of the CRUT provides a restriction on transfer of Debtor's income interests. In order to exclude the Debtor's income interest from property of the estate, however, this "spendthrift" provision must be enforceable under "applicable nonbankruptcy law." "Applicable non-bankruptcy law" includes both state and federal law. Patterson v. Shumate, 504 U.S. 753, 762, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992).
There are only three scenarios under which the restrictions in Article 18 could remove Debtor's interest in the *399 CRUT from the bankruptcy estate: 1) if Minnesota state common law would enforce this provision; 2) if the Internal Revenue Code or regulations promulgated thereunder mandate the inalienability of Debtor's life income interest, or 3) if a Minnesota statute so mandates.
As the Trustee correctly points out, no other interest in the CRUT is inalienable. The rights of Cyndi-Lee, Kara and Erica Mack are alienable, as are the rights of The Minneapolis Foundation. They can all be written out of the CRUT. Thus, if state or federal law mandates that the settlor's interest in the CRUT is inalienable, the Debtor, as settlor and initial income beneficiary, is in a very unique and favored position. Moreover, as the Trustee also correctly points out, he is not attempting to reach or in any way affect the rights of income beneficiaries, other than the Debtor-Settlor, or the rights of the charitable remainder. Nothing I decide here will in any way impact on the rights of the charitable remainder. The only issue is whether Congress or the State of Minnesota, in passing CRUT-governing statutes, intended not only to encourage charitable giving by allowing tax avoidance or deferral, but also to create a new protection from creditors for those wealthy enough to give away the remainder interests in assets. In other words, do we have a new bankruptcy planning tool for the wealthy? In passing section 664 of the Internal Revenue Code and Minnesota Statute sections 501B.31 and .32, did Congress and/or the Minnesota Legislature intend to create, not only a way for taxpayers to defer or avoid federal and state taxes, but also a way for settlors of these trusts to avoid paying their creditors. The question appears to be one of first impression and the answer to the question is no.
C. MINNESOTA COMMON LAW
It is clearly established that section 541(c)(2) of the Bankruptcy Code was intended to preserve the status of a spendthrift trust which would be recognized by state law. Patterson v. Shumate, 504 U.S. at 758, 112 S.Ct. 2242; Iannacone v. Trustees of Pillsbury Co., 84 B.R. at 601. In Minnesota, the validity of spendthrift trust provisions is governed by common law, there being no Minnesota statute which expressly deals with spendthrift provisions. Id. However, as I have previous held, Minnesota common law renders void and unenforceable an anti-alienation provision in a self-settled trust. In re Simmonds, No. 98-48019 (Bankr.D. Minn. April 28, 1999), aff'd Simmonds v. Larison, 240 B.R. 897 (8th Cir. BAP 1998).
Minnesota courts have clearly recognized a settlor's right, in creating a trust as a gift, without receipt of consideration, to suspend the beneficiary's ability to assign or alienate the beneficiary's equitable interest in the trust. The seminal case in Minnesota is First National Bank of Canby v. Olufson, 181 Minn. 289, 232 N.W. 337 (1930). In Olufson the bank had challenged the spendthrift protection of the debtor's interest in a trust created by the debtor's father. The bank asserted such spendthrift provisions conflicted with common law restrictions on the suspension of the power to transfer or alienate property. The court determined that, with regard to an equitable interest in property, as opposed to legal title, it was willing to diverge from the English common law forbidding restraints on alienation. The court was willing to recognize such a restraint in furtherance of an overriding principal, that the power of a testator to direct the disposition of his gift, and to prescribe the purposes and object of its benefit, would predominate over the claim of a creditor of a beneficiary, not the testator. Olufson, 181 Minn. at 293, 232 N.W. *400 at 339. However, even while recognizing this restraint on alienation, founded on the preeminence of the benefactor's will over the rights of the beneficiary's creditors, the court recognized that a materially different question was presented when the benefactor and the beneficiary were one and the same person. "Neither do we for a moment question the rule that one may not by his own act preserve to himself the enjoyment of property in such manner that it shall not be subject to the claims of creditors, or placed beyond his own power of alienation." Id.
The Minnesota Supreme Court's enforcement of spendthrift provisions in trusts since Olufson, although clear and expansive, has always involved protection of the interest of a beneficiary who is not the settlor of the trust. See, Morrison v. Doyle, 582 N.W.2d 237, 240 (Minn.1998); Van Dyke v. First Nat'l Bank (In re Moulton's Estate), 233 Minn. 286, 296, 46 N.W.2d 667, 672-673 (1951); Erickson v. Erickson, 197 Minn. 71, 78-79, 266 N.W. 161, 162-163 (1936). In each of these cases, the court has recognized the preeminence of the testator's will in making a gift over the rights of the beneficiary's creditors in reaching the object of such gift. However, the very statement of this principal in each of these cases recognizes that a materially different question is presented when the settlor and beneficiary are the same person:
The validity of a spendthrift trust is upheld on the theory that the owner of property, in the free exercise of his will in disposing of it, may secure such benefits to the objects of his bounty as he sees fit and may, if he so desires, limit its benefits to persons of his choice, who part with nothing in return, to the exclusion of creditors and others.
Morrison, 582 N.W.2d at 240 (citing In re Moulton's Estate, 233 Minn. at 290-91, 46 N.W.2d at 670). See also, Erickson, 197 Minn. at 75, 266 N.W. at 162.
While Minnesota's highest court has not spoken directly on the subject, federal courts have consistently concluded that Minnesota courts would not recognize a spendthrift trust where the trust was self settled. Drewes v. Schonteich, 31 F.3d 674, 677 (8th Cir.1994); Humphrey v. Buckley (In re Swanson), 873 F.2d 1121, 1123-24 (8th Cir.1989); Simmonds, 240 B.R. at 898.
The rule that a settlor cannot protect his interest in a trust through use of a spendthrift provision was also clear in the common law:
(1) Where a person creates for his own benefit a trust with a provision restraining the voluntary or involuntary transfer of his interest, his transferee or creditors can reach his interest. (2) Where a person creates for his own benefit a trust for support or a discretionary trust, his transferee or creditors can reach the maximum amount which the trustee under the terms of the trust could pay to him or apply for his benefit.
The RESTATEMENT (SECOND) OF TRUSTS § 156; see also 1 SCOTT, TRUSTS ¶ 156. The principal that a settlor cannot protect his property by transfer to a trust, retaining an interest in the trust is, thus, well settled.[6]
*401 D. FEDERAL LAW
1. Applicable Nonbankruptcy Law
The Defendants argue, however, that since Patterson, it makes no difference whether an anti-alienation provision is valid and enforceable under state law if federal law furnishes such a prohibition on alienation. In Patterson, the Supreme Court did hold that "applicable nonbankruptcy law" referenced in section 541(c)(2) of the Bankruptcy Code is not limited to state law and can include federal law. Patterson v. Shumate, 504 U.S. at 758, 112 S.Ct. 2242. Applicable nonbankruptcy law means any applicable law, state or federal, aside from the Bankruptcy Code, that would prevent ordinary creditors of the debtor from reaching the asset. In re Mueller, 256 B.R. 445 (Bankr.D.Md.2000).
Patterson concerned an ERISA[7] qualified employer pension plan that did not qualify as a spendthrift trust under state law. Nonetheless, the Court held that the debtor's beneficial interest therein was not property of the estate. The Court looked first at section 1053 of ERISA. That section provides in pertinent part: "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1053(a)(1).
The Court next looked at the coordinate section of the Internal Revenue Code, entitled Qualified pension, profit sharing, and stock bonus plans, which stated the general rule that "[a] trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that the benefits provided under the plan may not be assigned or alienated." I.R.C. § 401(a)(13).
Finally, the Court reviewed the applicable Treasury Regulation that provides in pertinent part that "benefits provided under the [ERISA] plan may not be assigned or alienated." Treas. Reg. § 1.401(a)-13(b)(1). The Supreme Court found these *402 sections to be "applicable nonbankruptcy law" for purposes of Bankruptcy Code section 541(c)(2). The question I must answer is whether section 664 of the Internal Revenue Code and the regulations thereunder, similarly provide applicable nonbankruptcy law which prohibits alienation of a Debtor's noncharitable income interest in the CRUT.
In ERISA Congress enacted an entirely new body of law and coupled it with provisions in the Internal Revenue Code granting qualifying retirement accounts favorable tax treatment. There is no affirmative law counterpart to ERISA dealing with CRUTs. Here, all applicable federal law is contained in the Internal Revenue Code and Treasury Regulations.[8] Moreover, the analysis of federal law on this issue is distinctively different than the analysis of state law. It is state law, not federal law, which dictates the substantive property rights of the grantor and beneficiaries of a trust and the rights of their respective creditors. See Simmonds, 240 B.R. at 898. As discussed earlier, Minnesota law not only does not authorize, but prohibits the settlor of a self-settled trust from suspending the alienation of his retained interest in the trust. Simmonds, 240 B.R. at 899. In contrast, the Internal Revenue Code dictates the taxation of the trust and its beneficiaries, not substantive property rights. Failure to comply with requirements of the Internal Revenue Code will alter the taxation of the trust, but would not override state law regarding substantive rights in the trust. Thus, in examining the Internal Revenue Code it is not enough that it does not explicitly prohibit an anti-alienation clause. Rather for the Defendants to be successful, they must show that section 664 and the regulations affirmatively require an anti-alienation restriction on the Debtor's interest in the CRUT.
2. Internal Revenue Code Section 664
Congress passed section 664 to curb abuses that had developed in the use of split interest trusts with charitable remainders. Estate of Reddert v. U.S., 925 F.Supp. 261, 266 (D.N.J.1996). If qualified, the grantor receives certain tax benefits, including an income tax charitable deduction for the present value of the charitable remainder interest created. Additionally, the qualified trust is income tax exempt, except for certain business income.[9]
Section 664(a) provides, in general, that notwithstanding other provisions of the Internal Revenue Code, taxation of a charitable remainder unitrust is governed by section 664 and regulations promulgated thereunder. Subdivision (b) specifies how distributions to a "beneficiary" shall be taxed. "Beneficiary" is defined to include an heir, legatee, or devisee. I.R.C. § 643(c). Subdivision (c) relieves a CRUT from payment of taxes, except with respect to limited business income. Subdivisions (e) and (f) specify how the charitable contribution to a CRUT is to be valued. Most importantly, subdivision (d) sets limits on the amounts that must or may be distributed to income beneficiaries, to whom such *403 distributions can be made, the outside limit on the trust's duration, and a minimum value that the charitable remainder interest must have to qualify for favorable treatment:
I.R.C. § 664(d)(2) provides as follows:
(2) CHARITABLE REMAINDER UNITRUST.  For purposes of this section, a charitable remainder unitrust is a trust 
(A) from which a fixed percentage (which is not less than 5% nor more than 50%) of the net fair market value of its assets, valued annually, is to be paid, not less often than annually, to one or more persons (at least one of which is not an organization described in § 170(c) and, in the case of individuals, to an individual who is living at the time of the creation of the trust) for a term of years (not in excess of 20 years) or for the life or lives of such individual or individuals.
(B) from which no amount other than the payments described in subparagraph (A) . . . may be paid to or for the use of any person other than an organization described in section 170(c).
(C) following the termination of the payments described in subparagraph (A), the remainder interest in the trust is to be transferred to, or for the use of, an organization described in section 170(c) or is to be retained by the trust for such a use . . .
(D) with respect to each contribution of property to the trust, the value (determined under section 7520) of such remainder interest in such property is at least 10 percent of the net fair market value of such property as of the date such property is contributed to the trust.
This section sets forth the basic requirements of a qualified charitable remainder unitrust. Subsection (A) of section 664(d)(2) defines the unitrust amount which can be paid to noncharitable beneficiaries as no more than 50% nor less than 5% of the net fair market value of that asset, valued annually. Subsection (B) provides that no amount other than the unitrust amount or a qualified gift to a charity may be paid by the trust. Subsection (C) provides requirements for the disposition of a charitable remainder interest.[10]
Conspicuously absent from Internal Revenue Code section 664 is any mandate that the noncharitable beneficiary's interest in a charitable remainder unitrust be unalienable. Presumably, if Congress had wished to impose such a requirement, it knew how to draft such language.[11] In fact, the language of section 664 suggests that Congress had no such intention. Congress used the word "beneficiary" to refer to the recipient of distributions from a CRUT. I.R.C. § 664(b). This term is broadly defined in section 643(c) to "include" (a nonlimiting word) certain types of transferees. The term has also been interpreted by the United States Supreme Court to include an assignee of the original taxpayer. See Blair v. C.I.R., 300 U.S. 5, 12, 57 S.Ct. 330, 81 L.Ed. 465 (1937).[12]
*404 Defendants, however, emphasize the language of section 664(d)(2)(A) which requires distribution of a fixed percentage of the value of Trust assets annually to one or more "individuals" who must be living at the time of the creation of the trust. From this language, coupled with that in section 664(d)(2)(B) which prohibits distributions other than to recipients of the Unitrust Amounts and to the charitable remainder, they argue that Congress clearly indicated that the Unitrust Amount must be paid only to Debtor. As the Trustee correctly points out, however, this is far too literal a reading of the statutory language. The purpose of requiring a specific designation of beneficiaries, and that they be living persons, is clear, at least when the Unitrust Amount is payable for the lives of the beneficiaries. Unless there is a requirement that the beneficiaries be specifically identified, it would be impossible to value the charitable remainder interest. See Treas. Reg. § 1.664.4(1997) (valuation of the remainder interest). Such language gives no hint that it was intended to do more than facilitate valuation of the charitable remainder interest.
3. Treasury Regulations
This is borne out in the regulations. In trying to resolve any ambiguity in the statutes, courts have consistently deferred to the Treasury Department's interpretive regulations so long as they "implement the congressional mandate in some reasonable manner." United States v. Cartwright, 411 U.S. 546, 550, 93 S.Ct. 1713, 36 L.Ed.2d 528 (1973) (quoting United States v. Correll, 389 U.S. 299, 307, 88 S.Ct. 445, 19 L.Ed.2d 537 (1967)). Of particular importance in this case are portions of Treasury Regulation 1.664-1 which deals generally with charitable remainder trusts and Treasury Regulation 1.664-3 which provides rules relating specifically to charitable remainder unitrusts.
Treasury Regulation 1.664-1 sets forth general information on charitable remainder trusts. It provides that "[g]enerally, a charitable remainder trust is a trust which provides for a specified distribution, at least annually, to one or more beneficiaries, at least one of which is not a charity, for life or for a term of years, with an irrevocable remainder interest to be held for the benefit of, or paid over to, charity." Treas. Reg. § 1.664-1(a)(1)(i)(1997). The regulation also contains definitions applicable to Treasury Regulation 1.664-1 as well as Treasury Regulation 1.664-3. Included are a definition of "unitrust amount" ("The term `unitrust amount' means the amount described in Paragraph (a)(1) of Treasury Regulation 1.664-3 which is payable, at least annually, to the beneficiary of a charitable remainder unitrust") and "recipient" ("the term `recipient' means the beneficiary who receives the possession or beneficial enjoyment of the . . . unitrust amount"). Treas. Reg. § 1.661-1(a)(1)(iii)(c) and (d) respectively. Internal Revenue Code section 664-1(a)(2) provides that a trust must be either a charitable remainder annuity trust or a charitable remainder unitrust and that a trust is a charitable remainder trust only if it is either a charitable remainder annuity trust in every respect or a charitable remainder unitrust in every respect. Treasury Regulation 1.664-1(a)(4) states that, in order for a trust to be a charitable remainder trust it must meet the definition of and function exclusively as a charitable remainder trust from inception. It also makes clear that one does not become the "owner" of a trust merely because one is both the grantor and a recipient of distributions.
*405 More specific to charitable remainder unitrusts and the issue of whether the income interest of Debtor is inalienable is Treasury Regulation 1.664-3. Treasury Regulation 1.664-3(a)(1) describes a charitable remainder unitrust as a:
trust which complies with the applicable provisions of section 1 .664-1 and meets all of the following requirements  (a) General Rule. The governing instrument provides that the trust will pay not less often than annually a fixed percentage of the net fair market value of the trust assets determined annually to a person or persons described in paragraph (a)(3) of this section for each taxable year of the period specified in (a)(5) of this section.
Treas. Reg. § 1-664-3(a)(1).
Treasury Regulation 1.664-3(a)(3), in turn, addresses who may receive distribution of the Unitrust Amount:
(3) Permissible recipients

(i) General rule. The amount described in subparagraph (1) of this paragraph is payable to or for the use of a named person or persons, at least one of which is not an organization described in Section 170(c). If the amount described in subparagraph (1) of this paragraph is to be paid to an individual or individuals, all such individuals must be living at the time of creation of the trust. A named person or person may include members of a named class except in the case of a class which includes any individual, all such individuals must be alive and ascertainable at the time of the creation of the trust unless the period for which the unitrust amount is to be paid to such class consists solely of a term of years. For example, in the case of a testamentary trust, the testators will may provide that the required amount shall be paid to his children living at his death.
(ii) Power to alter amount paid to recipients. A trust is not a charitable remainder unitrust if any person has the power to alter the amount to be paid to any named person other than an organization described in section 170(c) if such power would cause any person to be treated as the owner of the trust, or any portion thereof, if Subpart E, part 1, subchapter J, Chapter 1, Subtitle A of the Code were applicable to such trust . . . For example, the governing instrument may not grant the trustee the power to allocate the fixed percentage among members of a class unless such power falls within one of the exceptions to section 674(a).
Treas. Reg. § 1.664-3(a)(3).
Treasury Regulation 1.664-3(a)(4) deals with payments other than the payments made to recipients of the Unitrust Amount:
Other payments. No amount other than the amount described in subparagraph (1) of this paragraph may be paid to or for the use of any person other than an organization described in section 170(c). An amount is not paid to or for the use of any person other than an organization described in section 170(c) if the amount is transferred for full and adequate consideration. The trust may not be subject to a power to invade, alter, amend or revoke for the beneficial use of a person other than an organization described in section 170(c).
Treas. Reg. § 1.664-3(a)(4).
And Treasury Regulation 1.664-5 deals with how long the Trust has to vest the remainder interest in a charitable organization. Subparagraph (5) provides:
Period of payment of unitrust amount 
(i) General rules. The period for which an amount described in subparagraph (1) of this paragraph is payable begins with the first year of the charitable *406 remainder trust and continues either for the life or lives of a named individual or individuals or for a term of years not to exceed 20 years. Only an individual or an organization described in section 170(c) may receive an amount for the life of an individual. . . .
Treas. Reg. § 1.664-5.
Treasury Regulation 1.664-3(a)(3) by its title and its terms focuses on who may be a recipient of payments from the trust and is therefore most pertinent to the question before me. Once again, there is no explicit anti-alienation prohibition mentioned. If this Regulation prohibits alienation of the noncharitable interest, it only does so implicitly, and I find no such implication.
To the contrary, Treasury Regulation 1.664-3(a)(3) provides that the Unitrust Amount may be payable "to or for the use of" a named person or persons. A person, as defined by the Internal Revenue Code, includes, among others, an individual, a trust, or an estate. I.R.C. § 7701(a)(1). The term "estate" is not limited and would include a bankruptcy estate as well as a testamentary estate. If the trust provides for the payment to an individual, that individual must be living at the time of the creation of the trust. In permitting distribution of the Unitrust Amount to a person, this section contemplates that someone other than a living individual may receive a distribution. If distributions are initially made to a person and not an individual living at the time of the creation of the trust, Internal Revenue Code section 664 allows for payment of benefits for a term of years.
Again, as in the statute, this regulation focuses on restrictions which allow valuation of the charitable remainder interest. However, from the requirement that specific beneficiaries be designated, it cannot be reasonably implied that such beneficiaries are forbidden from assigning their interests. So long as someone's life (in this case that of the Debtor) serves to facilitate valuation of the remainder interest, it is of no consequence to the statutory scheme or its purposes that some other person, including the Debtor's bankruptcy estate, receives the benefits.
Defendants, however, argue that although there is no explicit anti-alienation language, taken as a whole, the regulations implicitly prohibit such alienation. This is incorrect. The Treasury Regulation construing Internal Revenue Code section 674 recognizes the rights of a beneficiary to assign or substitute its interest. Section 674 of the Internal Revenue Code provides that a grantor of a trust would be treated as an owner if the grantor has the power to dispose of a beneficial interest. I.R.C. § 674. The companion regulation clarifies this power. The regulation states, in part:
This limitation does not apply to a power held by a beneficiary to substitute other beneficiaries to succeed to his interest in the trust (so that he would be an adverse party as to the exercise or nonexercise of that power). For example, the limitation does not apply to a power in a beneficiary of a nonspendthrift trust to assign his interest.
Treas. Reg. § 1.674(d)-2(b).
If the CRUT does not qualify as a spendthrift trust, the regulation specifically provides for the alienation of the beneficiaries interest.
Defendants argue that Congress assumed CRUTs would be self settled,[13] and they rely principally on certain language in Treasury Regulation 1.664-3(a)(3), (4) and (5). As noted, however, Treasury Regulation *407 1.664-3(a)(3)(i) actually refutes Defendants' position because it allows distributions "to or for the use of" a recipient and designations by class. Insofar as it refers to living individuals, there is no mandate that such living individuals be the sole recipients of benefits. Nor does the mandate, in Treasury Regulation 1.664-3(a)(3)(ii), to the effect that a trust loses its beneficial tax status if any person has the power to alter the amount to be paid to any named person if such power would cause any person to be treated as the owner of the trust, support Defendants' argument. The Trustee, on behalf of the estate, will receive the same Unitrust Amount the Debtor would have received and, in doing so, the Trustee, like the Debtor before him, will not be treated as the owner of the trust. See I.R.C. § 678.[14]
Treasury Regulation 1-664-3(a)(4) is also not of help to Defendants. It addresses "other payments" and merely emphasizes that the charitable trust remainder must be protected from invasion and reduction, other than payments to persons in return for value. It expands upon the statutory dictate that payments of the unitrust amount and payments of the charitable remainder are the only types of payments that can be made. In essence, new beneficiaries may not be added if the effect would be to invade or alter the remainder. Substituting a bankruptcy trustee for Debtor, a noncharitable income beneficiary, does not invade or alter the charitable remainder.
Finally, defendants point to Treasury Regulation 1.664-3(a)(5) as the "most direct restriction" on a transfer of debtor's beneficial interest in the trust. This regulation is entitled "Period of payment of unitrust amount." It does not purport to deal with who may be a recipient, as does Treasury Regulation 1.664-3. The first sentence of Treasury Regulation 1.664-3(a)(5)(i) merely reiterates the statutory dictate that a trust may extend either for the life or lives of a named individual or individuals or for a term of fixed years, not to exceed 20. The second sentence then goes on to state that "[o]nly an individual or an organization described in section 170(c) may receive an amount for the life of an individual." Treas. Reg. § 1.664-3(a)(5)(i). According to the Defendants, "The bankruptcy estate is neither an individual nor a section 170(c) organization. The legal restriction on a transfer of Mack's beneficial interest could not be clearer." Defendants take sentence two out of context. It is merely meant to clarify how long payments may be made (for the life of an individual), not to limit the person who can receive a unitrust distribution. So long as someone's life is the defining life for purposes of determining the trust duration (in this case Debtor's life), who actually makes use of the distribution is of no consequence.
4. Revenue Procedures
In conclusion, neither federal statute nor Treasury Regulations mandate that Debtor's noncharitable income interest be protected *408 from his creditors. Applicable revenue procedures support this conclusion.
Because of the significant role tax consequences play in the creation of charitable remainder unitrusts, requests for private letter rulings regarding the qualification of proposed trusts are common. In 1989 and again in 1990, the IRS issued revenue procedures, Revenue Procedure 89-20, 1989-1 C.B. 841 and Revenue Procedure 90-30, 1990-1 C.B. 534. Each of these revenue procedures set out sample trust instruments which, if enforceable under local law, meet the requirements of a qualified charitable remainder unitrust. Absent from any of the sample trust instruments is any anti-alienation provision for the benefits to be paid by the trust to noncharitable beneficiaries.
5. Excise Taxes
Defendants also argue that if the bankruptcy estate takes control of the Debtor's interest in the Trust and receives payment of the Unitrust Amount, the CRUT will be treated as a private foundation and that certain excise taxes will be imposed. Once again, I disagree.
Defendants argument fails because CRUTs are subject to certain statutes that govern private foundations, including Internal Revenue Code section 4941 (prohibition against self dealing) and section 4945 (prohibition against taxable expenditures). I.R.C. §§ 4947(a)(2), 4947(b)(3). In Minnesota, section 501B.32, subd. 1, provides for automatic incorporation of the private foundation prohibitions into the governing agreement of any "split interest trust" as defined in section 4947(a)(2) of the Internal Revenue Code, to the extent such provisions apply. MINN. STAT. § 501B.32(1).
Defendants argue that the bankruptcy Trustee is a "disqualified person" and that payment of any amount to the bankruptcy estate, including the Unitrust Amount, would be an act of self dealing. Pursuant to Internal Revenue Code section 4941(a)(1) a tax is imposed on any act of self dealing between a private foundation and a disqualified person as defined in Internal Revenue Code section 4946. That section does provide that a private foundation manager is a disqualified person. However, it further provides that the Debtor is himself a "disqualified person" as the Debtor is a "substantial contributor" to the trust. I.R.C. § 4946(a)(1)(A). However, Treasury Regulation 53.4947-1(c)(2)(i) of the excise tax regulations provides that, under Internal Revenue Code section 4947(a)(2)(A), the self dealing provision of section 4941 and certain other private foundation rules do not apply to amounts payable under the terms of a split interest trust to income beneficiaries. Treas. Reg. § 53.4947-(c)(2)(i). In other words, payment of the Unitrust Amount to a person entitled to receive the same, is not an act of self dealing, even if the person is an otherwise "disqualified person" as defined in Internal Revenue section 4946.
Section 1398 further clarifies that no tax, including an excise tax, will be payable by reason of the transfer of the Debtor's beneficial interest in the CRUT to the bankruptcy estate. Internal Revenue Code section 1398(f)(1) provides:
a transfer (other than by sale or exchange) of an asset from the debtor to the estate shall not be treated as a disposition for purposes of any provision of this title assigning tax consequences to a disposition, and the estate shall be treated as the debtor would be treated with respect to such asset.
I.R.C. § 1398(f)(1).
This section is extremely broad. It overrides any other provision of the *409 Internal Revenue Code. The transfer from Debtor to the bankruptcy estate is not a disposition for purposes of any provision of the Internal Revenue Code, including the excise tax provisions of Internal Revenue Code sections 4941-4947. The bankruptcy estate also succeeds to the tax attributes of the Debtor under Internal Revenue Code section 1398(g). Courts have broadly construed this later provision to find that the bankruptcy trustee succeeds to the taxable "character of the asset itself." For example, in In re Godwin, 230 B.R. 341 (Bankr. S.D.Ohio 1999), the court held that the bankruptcy estate qualified for the section 121 exclusion from recognition of capital gain on the sale of a principal residence, because the estate succeeded to the "character of the asset." 230 B.R. at 345. The bankruptcy estate's receipt of the Unitrust Amount is clearly, under Internal Revenue Code section 1398, to be taxed the same as such amount would have been taxed in the hands of the Debtor.
Accordingly, the CRUT is not subject to excise taxes merely because a bankruptcy trustee replaces Debtor as the income beneficiary of the trust.
E. MINNESOTA STATUTES §§ 501B.31 AND 501B.32
Defendants urge that Minnesota Statute sections 501B.31 and 501B.32 provide the statutory prohibition on alienability, if Minnesota common law and federal statutes do not.
Again, we need to begin with the basics.
First, there is no Minnesota act specially applicable to CRUTs, just as there is no such separate federal law. CRUTs are referenced, instead, in section 510B.32 of Minnesota Statutes. Second, the Legislature has not explicitly stated that the interest of the income beneficiary in a charitable trust is inalienable. It has done so on other occasions and clearly knows how to legislate such protections. See, e.g., State Retirement System, MINN. STAT. § 352.15(1)(2000) (providing that retirement benefits are nonassignable); State Troopers, Retirement, MINN. STAT. § 352B.071(2000) (same); Public Employees Retirement Association, MINN. STAT. § 353.15(2000) (same).
Minnesota Statute section 501B.31 does evince a Legislative intent to treat charitable trusts generously. This statute provides that charitable trusts are not to fail simply because their language is unclear, that no charitable trust may limit the free alienation of title to any of the trust estate by the trustee, and that the Attorney General of the State of Minnesota is an interested party in litigation involving the construction and enforcement of charitable trusts. None of these provisions has anything to do with the question of whether the interest of an income beneficiary is alienable. The Trustee did, however, notify the Attorney General of the pendency of this action in accordance with the provisions of the statute.
Minnesota Statute section 501B.32 deals more specifically with "[p]rivate foundations, charitable trusts and split interest trusts." The trust involved in this proceeding is a "split interest trust" as that term is defined in section 4947(a)(2) of the Internal Revenue Code. Minnesota Statute section 501B.32 is a savings statute which reads into any Minnesota charitable trust provisions of the Internal Revenue Code which deal with administration of charitable remainder trusts. These are as follows:
(A) The trustee shall distribute for each taxable year of the trust amounts at least sufficient to avoid liability for the tax imposed by section 4942(a) of the Internal Revenue Code of 1986.

*410 (B) The trustee shall not engage in an act of "self dealing" as defined in section 4941(d) of the Internal Revenue Code of 1986 which would give rise to liability for the tax imposed by section 4941(a) of the Code.
(C) The trustee shall not keep "excess business holdings" as defined in section 4943 of the Code that would give rise to liability for the tax imposed by section 4943 of the Code.
(D) The trustee may not make investments that would jeopardize the carrying out of any of the exempt purposes of the trust, within the meaning of section 4944 of the Code so as to give rise to liability for the tax imposed by section 4944(a) of the Code.
(E) The trustee shall not make a "taxable expenditure," as defined in section 4945(d) of the Code that would give rise to liability for the tax imposed by section 4945(a) of the Code.
MINN. STAT. § 501B.32
These provisions of Minnesota law are taken directly from the safe harbor provisions of Revenue Procedure 90-30, 1990-1 C.B. 534. The CRUT contains these and all other requirements necessary to qualify it as a charitable remainder unitrust under federal law and as a charitable trust under Minnesota law.
Defendants argue that the tax under Internal Revenue Code section 4941 is imposed for self dealing which is defined in Internal Revenue Code section 4941(d) as including a "sale or exchange, or leasing, or property between a private foundation (charitable remainder trust) and a disqualified person." A charitable person, they argue, includes a "foundation manager" and the trustor. I.R.C. § 4946. A foundation manager includes an individual having powers similar to those of officers, directors, or trustee of the foundation (charitable remainder trust). I.R.C. § 4946. The Defendants argue that to the extent the bankruptcy trustee assumes control of Debtor's unitrust interest, he would be a foundation manager and the trustee of the Trust would be prohibited by Minnesota Statute section 501B.32(b) from distributing any portion of the Mack Trust's assets to him. As previously discussed, however, while the trustee, and indeed the Debtor, are not disinterested parties, the activities complained of are exempt from the application of section 4946 of the Internal Revenue Code. This argument fails for the same reason that the argument failed under federal law.
Next, Defendants argue that the tax under Internal Revenue Code section 4945(d) is imposed for a "taxable expenditure" which includes a payment "for any purpose other than one specified in section 170(c)(2)(B)." I.R.C. § 4945(d). Section 170(c)(2)(B) lists the following purposes: religious, charitable, scientific, literary or educational purposes or to foster national or international amateur sports competition or for the prevention of cruelty to children or animals. By definition a "`taxable expenditure' means any amount paid or incurred by a private foundation." I.R.C. § 4945(d). The CRUT is not a "private foundation" as contemplated by the statute.
Additionally, Defendants argue that the bankruptcy trustee has the status of a creditor and the trustees of the Mack Trust are prohibited by Minnesota Statute section 501(B).32 Subd. 1(e) from distributing any portion of the trust assets to Mack's creditors as being "taxable expenditures." As also previously discussed, the bankruptcy estate is a person as defined under the Internal Revenue Code, and as such is a proper beneficiary of the CRUT. A distribution to the beneficiary is not a taxable expenditure as defined by section 4945(d) of the Internal Revenue Code and *411 therefore not prohibited by Minnesota Statute section 501B.32 Subd. 1(e).
Defendants also make an assumption not supported by the record. Although the Trustee of the bankruptcy estate believes the Debtor's power to appoint the Trustee of the CRUT is property of the estate, that does not mean, and it is in fact unlikely, that the bankruptcy Trustee will seek to act as Trustee of the CRUT. The bankruptcy Trustee will not exercise any of the powers granted by Minnesota Statute 501B.32 and thus will not engage in any of the conduct complained of by Defendants.
F. POWERS
Under Article 13.3 of the CRUT, "The current Recipient (of the trust) may at any time, with or without cause, remove any Trustee (other than an Independent Special Trustee) upon written notice to the Trustee." Article 2.2 provides that in each taxable year of the Trust, the Trustee shall pay to the Recipients certain unitrust amounts and defines the "current recipient" as the recipient currently entitled to receive the unitrust amount. Debtor is a Trustee of the Trust.
Article 11 deals with limited powers of amendment to the trust. It provides in relevant part that "the provisions of this Trust Declaration are irrevocable and shall not be subject to amendment, alteration, or revocation by anyone, except as follows: (A) the Trustee shall have the power and duty, acting alone and without the approval of any court, Trustor, recipient or remainderman, to amend the Trust Declaration in any manner required for the sole purpose of ensuring that the trust qualifies and continues to qualify as a charitable remainder unitrust within the meaning of section 664(d)(2) of the Internal Revenue Code and the corresponding regulation."
The Trustee has many other powers under the Trust Declaration, including the power to amend, alter or revoke the charitable remainder beneficiary designation (Article 11) and the power to modify the income interests of his spouse and his children.
All legal and equitable interests in the Trust Declaration of the Debtor became property of the bankruptcy estate, except as excluded by Bankruptcy Code section 541(b)(1): "Property of the estate does not include  (1) any power that the debtor may exercise solely for the benefit of an entity other than the debtor." The trustee seeks only a declaration that two of the powers given to the Debtor as Trustee become property of the estate: his powers under Article 13.3 to remove a Trustee and the power under Article 11 to amend the Trust Declaration to conform it to preserve its tax favored status under federal law. Neither of these two powers is a power "that the debtor may exercise solely for the benefit of an entity other than the debtor." Replacement of a Trustee with a Trustee of the Bankruptcy Trustee's choice and protection of the trust tax deferred status both benefit the estate, as representative of the Debtor. Neither, as defendants argue, meets the criteria of Bankruptcy Code section 541(b)(1) for exclusion from the estate.
Accordingly, the two powers specified by the Trustee are included in the bankruptcy estate.
G. PUBLIC POLICY
The main thrust of Defendants' evidence at trial and one of their main arguments was that the result reached in this case will discourage charitable giving. One of the defendants' witnesses testified that, if the Trustee receives a distribution that the IRS subsequently determines will disqualify the trust from favorable tax treatment, capital gains taxes on the sale of the Olympic *412 stock as well as penalties of close to $850,000 will come due, virtually consuming the trust value as of June 1, 2001 of $960,000. Thus, the charitable remainder will be severely affected. A second witness, a financial planner, testified as to expected values of the charitable remainder over a period of 30 years or more and to the fact that, if the trust were disqualified and could not defer taxes by reason of the distributions made to the trustee, there would be a significant reduction in expected rates of return to the trust. This witness also testified that he regularly recommends use of a charitable remainder trust to his wealthy clients, that not all of them take his advice to part with some of their money in favor of charity, and that if the trustee wins this case the witness would need to advise his wealthy clients of the risk that their charitable remainder trust might be subject to collapse and adverse tax consequences if they subsequently go broke.
All of this assumes, however, that the CRUT would lose its tax favored treatment if the Trustee steps into the shoes of the Debtor with respect to receipt of the unitrust distributions during the life of the Debtor. As previously determined, however, neither state nor federal law prohibit alienation of the noncharitable interest of the Debtor-Settlor and thus the doomsday scenario outlined by the Debtor will not occur.
Basically, the Defendants contend that this court should interpret section 664 and the regulations, or alternatively Minnesota Statute section 501B.32, as creating a new form of unlimited exemption from creditor attack for the settlor's retained noncharitable interest in a self settled trust. Congress did create such a new form of exemption in ERISA but its purpose in doing so was to increase retirement savings and accordingly it was necessary to protect such savings from attack by creditors. The same public policy reasons do not apply here. Whether the Debtor can or cannot protect the income stream of a noncharitable recipient is of no consequence to the purpose of encouraging the formation of CRUTs, that is charitable giving. Nothing said in this opinion will in any way impact on the charitable remainder of the CRUT and there is a total disconnect between protecting the charitable and noncharitable interests.

ORDER FOR JUDGMENT
ACCORDINGLY, IT IS HEREBY ORDERED THAT judgment shall be entered in favor of the Plaintiff and against the Defendants as follows:
1. Judgment in favor of the Trustee and against Defendant Jeffrey C. Mack, in the amount of $39,488.58, together with interest on the amount of $19,744.29 from March 30, 2001 to the date of entry of judgment, and on the other $19,744.29 from June 30, 2001 to the date of entry of judgment. If the CRUT made a further postpetition distribution to the Debtor at the end of the third quarter of 2001, judgment in favor of the Trustee and against Defendant Jeffrey C. Mack in such amount, together with interest from the date of such distribution to the date of entry of judgment.
2. It is hereby determined that the income interest of the Debtor Jeffrey C. Mack in the Jeffrey C. Mack Charitable Remainder Unitrust dated January 17, 1997 is property of the bankruptcy estate, together with the power to appoint or discharge trustees of the trust and the power to amend the trust to preserve its tax qualified status.
3. Jeffrey C. Mack and Dave F. Senger, as trustees of the CRUT, together with any other or successor trustee, are hereby directed to recognize the bankruptcy *413 estate as the holder of such lifetime income interest and powers and to pay future distributions of the Unitrust Amount, otherwise payable to Jeffrey C. Mack, to the bankruptcy Trustee.
4. This holding shall be binding upon all Defendants and the Minnesota Attorney General in accordance with the standing under Minnesota Statute § 501B.41.
LET JUDGMENT BE ENTERED ACCORDINGLY.
NOTES
[1] Debtor was not in the habit of charitable giving. In 1998, the year following creation of the trust, his taxable income was $1,220,624, including wages of $664,710, $155,343 in capital gains and $345,111 in other income. That year the Macks contributed a whopping $411 to charity.
[2] Actually, the true value of the charitable remainder interest was even smaller, $21,263, the difference being attributable to differing, but legitimate, ways of making the charitable deduction calculation.
[3] 11 U.S.C. § 101(32) provides, in part:

"insolvent" means 
(A) with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of 
(i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and
(ii) property that may be exempted from property of the estate under section 522 of this title;
11 U.S.C. § 101(32).
[4] There were minor adjustments in each year as a consequence of which slightly different amounts were actually distributed to the Debtor.
[5] It is not clear whether the CRUT distributed an additional $19,744.29 to Debtor on September 30, 2001, while this case was under advisement.
[6] This rule is widely recognized in other jurisdictions. See In re Spenlinhauer, 182 B.R. 361 (Bankr.D.Me.1995), aff'd 195 B.R. 543 (D.Me.1996), aff'd 101 F.3d 106 (1st Cir.1996) (holding that entire value of settlor/beneficiary's one-third interest in trust income and principal, and not just the income distributions that settlor/beneficiary was presently entitled to receive, were included in property of the estate); Markmueller v. Case (In re Markmueller), 51 F.3d 775, 776 (8th Cir.1995) (applying Missouri law, interest in self settled trust included in bankruptcy estate); Aylward v. Landry (In re Landry), 226 B.R. 507, 510 (Bankr.D.Mass.1998) (spendthrift trust is ineffective against creditors if the settlor creates a trust for the settlor's own benefit); Kaplan v. Primerit Bank (In re Kaplan), 97 B.R. 572 (9th Cir. BAP 1989)(a person cannot secrete and insulate his property from his creditors by temporarily placing that property in what he styles a spendthrift trust while the income and corpus of the trust remain payable to him); In re Hartman, 115 B.R. 171 (Bankr.W.D.Ark. 1990)(a person may not establish a trust under which he is to receive income as a beneficiary, while at the same time attempting to protect the trust assets from his creditors by the simple inclusion of a spendthrift clause); Dery v. U.S. (In re Bridge), 90 B.R. 839 (Bankr.E.D.Mich.1988), on reh'g 106 B.R. 474 (Bankr.E.D.Mich.1989)(in bankruptcy action, discretionary spendthrift trust created for benefit of debtors was invalid where, among other things, debtors were both settlors and beneficiaries of trust); Williams v. Threet (In re Threet), 118 B.R. 805 (Bankr.N.D.Okla.1990)(under the law of spendthrift trusts, including the statutory law of Oklahoma, a self-settled trust cannot be spendthrift); Murphey v. C.I.T. Corp., 347 Pa. 591, 33 A.2d 16, 18 (1943) (spendthrift provision in trust created by husband and wife for their benefit was invalid); Farmers State Bank v. Janish, 410 N.W.2d 188 (S.D.1987) (debtor who was both a beneficiary and a settlor of the trust rendered spendthrift provision invalid); Brown v. Westvaco Corp. (In re Cassada), 86 B.R. 541 (Bankr.E.D.Tenn.1988)(the rationale for the rule prohibiting a person from putting his own property in a spendthrift trust with himself as beneficiary is that a person cannot put his property beyond the reach of his creditors and still have the use of it for his personal benefit); Citizens Nat'l Bank v. Taylor (In re Goff), 812 F.2d 931, 933 (5th Cir. 1987)(if a settlor creates a trust for his own benefit, a spendthrift clause restraining alienation or assignment is void); Bank of Dallas v. Republic Nat'l Bank of Dallas, 540 S.W.2d 499, 502 (Tex.Civ.App.1976) (creditors were allowed to reach the debtor's interest in spendthrift trust in which he was one of two settlors and one of three beneficiaries).
[7] Employer Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et. seq.
[8] "Affirmative law" may not be required. See In re Mueller, 256 B.R. 445, 456 (Bankr. D.Md.2000) (a debtor's interest in a non-ERISA plan can nonetheless be excluded from property of the estate based solely on the IRC). But, its absence bears on Congressional intent.
[9] The Debtor, taking advantage of these tax rules, received a charitable contribution deduction in 1997 when the CRUT was created. Additionally, capital gain on the sale of the Olympic stock contributed to the CRUT of approximately $1,645,000 was not recognized by the CRUT in 1997.
[10] Subsection (D), added subsequent to the creation of this CRUT and not applicable in this case, requires that the charitable remainder interest have a value of at least 10% of the net fair market value of the property contributed. The Debtor's CRUT would not meet the requirements of Subd. (D) as the charitable remainder interest had a value of less than 2% of the assets.
[11] See, e.g., ERISA, 29 U.S.C. § 1053(d)(1).
[12] In Blair, the Supreme Court found the term "beneficiary" to be "merely descriptive of the one entitled to the beneficial interest." Provisions that the beneficiary was responsible for payment of taxes on income distributions to it could not be taken to "preclude valid assignments of the beneficial interest or to affect the duty of the trustee to distribute income to the owner of the beneficial interest, whether he was such initially or became such by valid assignment." Blair, 300 U.S. at 12, 57 S.Ct. 330.
[13] "[N]either the grantor nor his spouse shall be treated as the owner of the trust . . . merely because the grantor or his spouse is named as a recipient." Treas. Reg. § 1.664-1(a)(4).
[14] I.R.C. § 678 provides that a person other than grantor would be treated as substantial owner, if:

(1) such person has a power exercisable solely by himself to vest the corpus or the income therefrom in himself, or (2) such person has previously partially released or otherwise modified such a power and after the release or modification retains such control as would, within the principles of sections 671 to 677, inclusive, subject a grantor of a trust to treatment as the owner thereof.
The Debtor's bankruptcy estate will not obtain the power to vest the corpus or income in itself, nor has the estate previously released or modified such power.