**In re Joyce M. HAGEMAN, Debtor.**

No. 00–51970.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

March 23, 2001.

Steven P. Beathard, London, OH, for Debtor.

Susan L. Rhiel, Rhiel & Terlecky, Columbus, OH.

Frederick L. Ransier, III, Columbus, OH, Chapter 7 Trustee.

Alexander G. Barkan, Assistant U.S. Trustee, Columbus, OH.

## MEMORANDUM OPINION AND ORDER

CHARLES M. CALDWELL, Bankruptcy Judge.

This Memorandum Opinion and Order constitutes the Court's findings of fact and conclusions of law on the Second Objection to the Claims of Exempt Property filed by Frederick L. Ransier ("Trustee") and the Memorandum in Support of Claimed Exemptions filed on behalf of Joyce M. Hageman ("Debtor"). The dispute involves the effort of the Trustee to administer approximately $60,000.00 in proceeds held in a retirement plan of the former spouse of the Debtor and payable to her through a Qualified Domestic Relations Order ("QDRO"). Based upon a review of documents admitted into evidence, the testimony of the Debtor, the statements of counsel, and memoranda, the Court has determined that the Trustee's Second Ob-

jection to the Claims of Exempt Property should be sustained.

The Court has concluded that because the proceeds emanate from the QDRO rather than the retirement plan, they cannot be excluded by applicable ERISA case law and constitute property of the estate subject to administration by the Trustee. In addition, the Court has found, in view of the origin of the funds and the scope of the Ohio retirement-related exemptions, those provisions are not applicable in the instant case. Finally, the Court has determined that the Ohio spousal support exemption is not applicable in view of the clear designation of the proceeds as a division of property, which the Court finds was the intent of the parties. A brief history of this case will illustrate the bases for the Court's decision.

On August 31, 1999, a Magistrate Decision and Decree of Dissolution of Marriage was entered by the Fayette County, Ohio, Common Pleas Court in the case of *Thomas H. Hageman v. Joyce M. Hageman,* Case No. 99–0217–DRC. As part of the dissolution, the Debtor and her former spouse executed a Separation and Property Settlement Agreement ("Agreement") which in relevant part delineated the division of marital property and provided as follows: "Retirement: Husband shall retain his retirement accounts through [sic] Seventh Farm Credit Retirement Savings Plan with the exception that [sic] wife shall be awarded sixty thousand dollars ($60,-000.00) of said plan to be distributed to her by way of a qualified domestic relations order." At the time of the execution of the Agreement, there was an approximate total of $225,000.00 in the retirement plan based upon contributions of the former spouse.

The Agreement provided that the Debtor and her former spouse would hold each other harmless for credit card obligations

in their respective names, and expressly set forth that, "... *Neither party shall be awarded spousal support from the other and the Court shall not retain jurisdiction over the issue of spousal support ....*" (emphasis supplied). The only support provided was for their daughter in the amount of $160.66 per week, and the former spouse retained two mutual fund accounts in order to defray the post-high school education of the daughter. The Debtor's former husband also retained the marital real estate, and was obligated to hold the Debtor harmless on the mortgage obligations.

The Debtor was not represented by legal counsel in the dissolution proceeding; however, the Agreement provided that the Debtor, "... acknowledges that she is fully aware that the attorney involved does not represent her that [sic] she has been given full opportunity to evaluate her need for legal representation free of any potential conflict; that she has had adequate opportunity to obtain her own legal counsel and elects to proceed without legal representation ...."

Approximately seven months later, on March 13, 2000, the Debtor filed the instant chapter 7 bankruptcy proceeding. In the Schedules, the Debtor disclosed her interest in her former spouse's retirement plan, which was valued at $60,000.00, but claimed that this sum was exempt pursuant to O.R.C. § 2329.66(A)(10)(c) **(Individual Retirement Accounts).** On "Schedule F—Creditors Holding Unsecured Nonpriority Claims," the Debtor listed a total of $39,223.14 in debt that included four credit card accounts with balances ranging from approximately $6,000.00 to $14,000.00. There were no other liabilities scheduled.

On the very next day after the bankruptcy filing, March 14, 2000, a QDRO was entered by the Fayette County, Ohio,

Common Pleas Court, and in relevant part it provided that the Debtor was: "... awarded and assigned, as (her) *sole and separate property*, $60,000.00 of the balance of the (former spouse's) accounts, as of August 26, 1999 under the Plan ...." (emphasis supplied). The QDRO further provided that, "... (the Debtor) shall be entitled to receive distribution of the balance ... ($60,000.00), at such time as the ... (Debtor) elects following the Administrator's determination that this Order constitutes a Qualified Domestic Relations Order ..., but in no case later than the later of the ... (former spouse's) attainment of age 65 and termination of employment. *Any distribution shall be made in the form of a lump sum payment.*" (emphasis supplied).

What followed was a flurry of litigation regarding the claimed exemption of the $60,000.00 interest. First, on May 15, 2000, the Trustee filed an Objection to the Claims of Exempt Property that related to the original exemption claim filed under O.R.C. § 2329.66(A)(10)(c) **(Individual Retirement Accounts)**. The Objection was premised on the fact that the retirement plan at issue was not the Debtor's and that the exemption provision was inapplicable. At best, the Trustee asserted the Debtor could only claim an extremely modest exemption ($400.00) for sums due and payable pursuant to O.R.C. § 2329.66(A)(4)(a). On May 31, 2000, the Debtor filed a Reply to Objection of Trustee stating that novel issues were presented, and that in view of the sum involved, special counsel would be retained. The Court granted continuance requests in light of the Debtor's retention of special counsel.

Meanwhile, on the parallel domestic relations track, the plan administrator was engaged in the process of fulfilling its obligation under the QDRO and ERISA, and on August 8, 2000, issued a letter indicating that the terms of the QDRO would be honored under ERISA. The parties had thirty days to object, and if no objection was received the $60,000.00 would be distributed to the Debtor. No objection was raised, however; as of the last hearing in this case the Debtor had not sought a distribution.

Eight days later, on August 16, 2000, an, "Amended Schedule C–Property Claimed as Exempt" was filed on behalf of the Debtor, in which the $60,000.00 was claimed exempt under three provisions, rather than just one: O.R.C. § 2329.66(A)(10)(b) **(Pension plans and/or annuities)**, § 2329.66(A)(10)(c) **(Individual Retirement Accounts)**, and § 2329.66(A)(11) **(Spousal support)**. On August 22, 2000, the Trustee's Second Objection to the Claims of Exempt Property was filed. The Trustee, in addition to the challenge raised in his initial objection, asserted that since the Debtor's interest in the fund was premised upon the QDRO and not the retirement plan that belonged to the former spouse, her interest could not be claimed as exempt as a pension plan and/or annuity. The Trustee also argued that by virtue of the express language of the Agreement, the fund was not spousal support but rather a division of marital property, and could not be claimed exempt as support.

The Debtor provided testimony to support her exemption claims, particularly related to her assertion that the fund constituted or was in the nature of spousal support. The Court has considered this testimony, along with information disclosed in the Schedules and Statement of Financial Affairs. The Debtor testified that she was planning to leave the proceeds in her former spouse's retirement plan until she retired, and that this was an important consideration because she did not have a retirement plan in her

current employment. The Schedules filed on behalf of the Debtor show she was 51 years old at the time of filing, and disclose that she has been employed as an Onsite Supervisor for Act I Temporaries for the last two and one-half years with monthly net take home pay in the amount of $1,716.92.

Other sources of income disclosed include the sum of $290.00 per month from a part-time job with the Community Action Agency and the sum of $690.00 per month in support payments received for the child. These add up to a total monthly net income of $2,696.92. This amount is slightly higher than the total monthly expenses disclosed ($2,662.25), which includes generous allowances for monthly food and recreational expenditures for the Debtor and her daughter in the respective amounts of $750.00 and $200.00. A review of the Statement of Financial Affairs shows that during the year 1999, the Debtor had gross income in the amount of $32,635.71, and year 2000 gross income, as of the date of filing, in the amount of $6,200.00. The Debtor testified, however, that her expenses would increase this year because of the loss of health coverage under her former spouse's insurance plan. The Debtor testified that she had incurred the credit card debt that is scheduled ($39,223.14) prior to the dissolution, and that she had not worked outside of the home until October 12, 1998, in order to stay with the daughter. The Debtor testified that she did not have any significant health problems.

■ The instant case presents issues regarding the relationship between ERISA and QDROs that determine whether the $60,000.00 may be excluded from the estate property or in the alternative may be claimed exempt based upon the Ohio retirement-related provisions. In the case of *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), it was held that a debtor's interest in an ERISA qualified plan is excluded from the bankruptcy estate and is not subject to administration by a trustee. In reaching this conclusion, the Court was seeking to promote the public policy of ensuring that the treatment of pension benefits would not vary based upon the plan participant's bankruptcy status and to give full effect to the goal of ERISA which is to protect pensions earned by the participants. *Patterson v. Shumate*, at 764–765, 112 S.Ct. 2242. As noted earlier by the Supreme Court, the goal of ERISA is to ensure that, "if *a worker* has been promised a defined pension benefit upon retirement-and *if he has fulfilled* whatever conditions are required to obtain a vested benefit-*he actually will receive it.*" *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 375, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980). (emphasis supplied).

Under ERISA, retirement plans must contain spendthrift provisions that would preclude the voluntary alienation of a beneficial interest in the retirement plans. 29 U.S.C. § 1056(d)(1); 26 U.S.C. § 401(a)(13)(A); *See*, Lisa M. Smith, *ERISA Qualified Pension Plans as Part of the Bankruptcy Estate After Patterson v. Shumate*, 21 Cardozo L.Rev. 2119 (2000) [1]. QDROs, however, are treated as an exception to this requirement. 29 U.S.C. § 1056(d)(3)(A); 26 U.S.C.

---

1. In this article, three ways to potentially recover pension benefits by trustees post *Patterson v. Shumate* are discussed: 1) standing in the shoes of a tax lien creditor in order to invade the pension to the extent of the lien; 2) utilizing the trustee's statutory strong arm powers under 11 U.S.C. § 544 to obtain a court order compelling the debtor to withdraw the pension proceeds and deposit them in the estate; and 3) treating contributions to the plan as fraudulent conveyances.

§ 401(a)(13)(B). A QDRO is as an order of a state domestic relations court involving property settlements, support, alimony, etc., that assigns to an alternate payee a right to receive all or a portion of benefits payable to the retirement plan participant. 29 U.S.C. § 1056(d)(3)(B). Upon entry of a QDRO by a state domestic relations court, it becomes the responsibility of the retirement plan administration to determine whether it is in compliance and does not violate the anti-alienation provisions of ERISA. 29 U.S.C. § 1056(d)(3)(G); 26 U.S.C. § 414(p).

By definition, a QDRO is a means to convey a property interest in a retirement plan to a person other than the plan participant. For this reason it has been held that QDROs create property interests separate and distinct from those of the plan participants rather than creating mere claims. *In re Debolt,* 177 B.R. 31, 36 (Bankr.W.D.Pa.1994); *In re McCafferty,* 96 F.3d 192, 197–199 (6th Cir.1996); *In re Brown,* 168 B.R. 331, 334–335 (Bankr. N.D.Ill.1994); *Brown v. Pitzer (In re Brown),* 249 B.R. 303, 308–310 (S.D.Ind. 2000). Alternate payees receiving funds pursuant to QDROs are liable for taxes attributable to their distributions and are also entitled to an allocation of the return earned under the plan. *See,* Diane Womack, *What Matrimonial Lawyers Need to Know About Bankruptcy, Tax and Corporate Law Issues,* 1999, 273 PLI/Est 201. The underlying goal is to:

> ... (disentangle) the economic relationship of the parties in divorce cases so that the rights and obligations of each vis-a-vis the other are extinguished.... (and) "create a conclusion and finality to their marriage." ... When the only significant marital asset is a pension, division of the asset usually is required in order to structure equitable division of property.... Inasmuch as a claim or right to payment gives rise to an obligation on behalf of the (plan participant), ... *this "objective to disentangle" is best accomplished through an award of a separate interest rather than a claim against the (plan participant's) interest. In re Debolt* at 37, *quoting Hoyt v. Hoyt,* 53 Ohio St.3d 177, 559 N.E.2d 1292 (1990) (emphasis supplied).

The Debtor's attempts to exclude the $60,000.00 from the estate property based upon *Patterson v. Shumate* must fail because her property interest does not emanate from the retirement plan itself, but from the QDRO. *In re Johnston,* 218 B.R. 813, 817 (Bankr.E.D.Va.1998). The funds in the plan were derived from her former spouse's employment, and it was his plan. If it had been her retirement plan, then this Court would be bound to conclude that the interest is excluded based upon *Patterson v. Shumate* and subsequent case law. *See, e.g., In re Bartholomew,* 214 B.R. 322 (Bankr.S.D.Ohio.1997). But that is not the case, and by virtue of the QDRO and only the QDRO, as of the date of the filing there was a property interest in the fund within the purview and meaning of section 541(a)(1) of the United States Bankruptcy Code.

This property interest is not subject to exclusion based upon *Patterson v. Shumate.* Whether it can be characterized as equitable or legal at the time of filing is academic. Suffice it to say there was a property interest on the date of filing that the Trustee was obligated to administer pursuant to section 704(1) of the United States Bankruptcy Code, and one that he may pursue through section 544 of the United States Bankruptcy Code. The postpetition approval of the QDRO by the plan administrator served only to further confirm this property interest that arose on the date of filing, provided an alternative legal basis for administration by the Trustee (11 U.S.C. § 541(a)(5)(B)) and most im-

portantly provided for a means of immediate payment subject to administration by the Trustee.

To adopt the position of the Debtor would seriously misconstrue the holding and purpose of *Patterson v. Shumate*, which is to protect plan participants, and would deprive her creditors of a significant recovery. Numerous cases cited on behalf of the Debtor are distinguishable because they involve plans where the debtors are the plan participants, unlike the case before the Court, where we have a mere alternate payee pursuant to a QDRO who has the unfettered ability to obtain immediate payment without regard to the terms of the plan. The case of *In re Abbata*, 157 B.R. 201 (Bankr.N.D.N.Y.1993) also cited on behalf of the Debtor, is not instructive because it merely involves an interpretation of the New York exemption statute that is more broadly drafted than its Ohio counterpart. Also, the *In re Abbata* court worked from the premise that the interest of the debtor/alternate payee was property of the estate and subject to administration but for the applicable New York exemption provisions.

■ The Court will now address the alternative efforts of the Debtor to exempt the proceeds as a pension plan and/or annuity (O.R.C. § 2329.66(A)(10)(b)) or as an individual retirement account (O.R.C. § 2329.66(A)(10)(c)). First, these arguments suffer from the same faulty premise advanced to exclude the proceeds, i.e., that they emanate from the retirement plan. Instead, we reiterate that they are derived from the QDRO, and the plan participant is not before this Court.

Second, this Court has carefully reviewed the two Ohio retirement-related exemption statutes at issue and determined that they are drafted in such a manner as to protect only the plan participant, and not a former spouse entitled to payment based upon a QDRO. The Ohio exemption provisions, by their express language, firmly tie their protections to the plan participant who made the allowed contributions and who is eligible under the plan to receive benefits, as opposed to an alternate payee entitled to payment pursuant to a QDRO. These Ohio exemptions are in stark contrast to provisions, for example in Virginia, where express protections are provided to alternate payees. *In re Johnston*, at 817–818.

■ The Debtor's attempt to claim the $60,000.00 in plan proceeds exempt as spousal support pursuant to O.R.C. § 2329.66(A)(11) must also fail. A review of the Agreement makes it abundantly clear that there was to be no provision for spousal support, and no continuing jurisdiction to award spousal support. While the Court understands that the Debtor was not represented by counsel, the Agreement is equally clear that the Debtor was advised of this fact, and decided to proceed without legal assistance. The suggestion that the Court should disregard the clear language of the Agreement, and conclude that its essence or true purpose was to provide spousal support, is not demonstrated by the facts and is unavailing.

At the time the Agreement was executed, the Debtor had significant charge card obligations that she incurred prior to the dissolution and that are subject to the hold harmless provisions. The Debtor's interest in the fund, which is approximately 25 percent of its entire value at the time of the divorce, would have been sufficient to pay all her scheduled creditors, and after administrative costs and taxes, may have even resulted in a return to the Debtor. The Court concludes that indeed, the essence of the Agreement was to provide, through the division of the retirement fund proceeds, a means to render effective the hold harmless provisions, rather than providing spousal support.

859

This conclusion is supported by the fact that the Debtor disclosed in her Statement of Financial Affairs gross income during the year 1999 in the amount of $32,635.71, and year 2000 gross income as of the date of filing in the amount of $6,200.00. Other factors considered include: (a) the lack of any significant health problems; (b) the relatively young age of the Debtor, now 52; (c) the fact that the support and college education of the daughter are subject to separate provisions in the Agreement; and (d) the fact that the budget of the Debtor contains generous allowances for food and recreation. From all of these circumstances, the Court cannot find that the terms of the Agreement should be viewed as in the nature of spousal support.

The Court is sympathetic to the plight of the Debtor, who is attempting to reenter the job market after a long period of working in the home. Indeed, such concerns may have dictated the pursuit of non-bankruptcy financial remedies. The Court notes that prior to the bankruptcy filing, the $60,000.00 may have been sufficient to pay all the creditors and perhaps even result in a balance sufficient for the Debtor to begin a new life for herself and her daughter. Even assuming all funds were consumed by creditors and tax authorities, at a minimum, the Debtor would have been able to go on with her life substantially debt free. The current circumstances of the Debtor, however, should not be elevated to the level that they preclude a significant recovery for creditors, now that the case has been filed.

Accordingly, the Trustee's Second Objection to the Claims of Exempt Property is **SUSTAINED,** and the exemption claims of the Debtor are **DISALLOWED.**

IT IS SO ORDERED.