In re Michelle M. LALCHANDANI,
Debtor.

David W. Ostrander, Chapter
7 Trustee, Appellant,

v.

Michelle M. Lalchandani, Appellee.

BAP No. MW 01–084.
Bankruptcy No. 00–44432–HJB.

United States Bankruptcy Appellate Panel
of the First Circuit.

July 2, 2002.

David W. Ostrander of Ostrander Law Office on brief for Appellant, David W. Ostrander, Chapter 7 Trustee.

Frank R. Saia and Terry M. Ford of Saia Law Office on brief for Appellee, Michelle M. Lalchandani.

VAUGHN, BROWN, and KORNREICH, U.S. Bankruptcy Appellate Panel Judges.

PER CURIAM.

## INTRODUCTION

Debtor/Appellee, Michelle M. Lalchandani (the "Debtor"), was awarded an interest in her former husband's ERISA-qualified retirement plan pursuant to a divorce decree and a qualified domestic relations order. After the divorce, but prior to receiving a distribution from the retirement plan, the Debtor filed a voluntary

petition for Chapter 7 relief in the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court") and asserted that the interest was either not property of her bankruptcy estate subject to turnover to the Chapter 7 trustee, or, alternatively, that it was exempt under 11 U.S.C. § 522(d)(10)(E). The Bankruptcy Court ruled that the Debtor's undistributed interest in her former husband's ERISA-qualified retirement plan was excluded from property of the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2). The Chapter 7 trustee appeals the Bankruptcy Court's decision. For the reasons set forth below, we affirm the judgment.

## FACTUAL BACKGROUND

In 1999, the Debtor commenced a divorce action in the Hampden Probate and Family Court, Docket No. 99D2659. As part of the divorce proceedings, the Probate Court entered a Judgment of Divorce Nisi incorporating a divorce separation agreement between the parties dated August 21, 2000 (the "Separation Agreement"). The Separation Agreement required the Debtor's former husband to transfer $25,000 from his American Funds Pension Plan (the "Pension Plan")[1] to the Debtor's "pension plan" by means of a qualified domestic relations order. On that same day, the Probate Court issued a Qualified Domestic Relations Order ("QDRO") to effectuate the distribution to the Debtor from her former husband's Pension Plan. Pursuant to the QDRO, the Debtor was made an "alternate payee" under the Pension Plan, and was "assigned $25,000.00 of the American Funds Pension

Plan." It is undisputed that, at all times relevant hereto, the Debtor has not received an actual distribution of funds from the Pension Plan.[2]

On August 16, 2000 (the "Petition Date"), five days prior to the issuance of the QDRO, the Debtor filed a voluntary petition under Chapter 7 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Code"). Although the Debtor filed schedules with the Bankruptcy Court, she did not identify her undistributed interest in the Pension Plan as an asset of her bankruptcy estate.

Appellant, David W. Ostrander (the "Trustee"), was appointed as the Chapter 7 Trustee of the Debtor's bankruptcy estate. On June 13, 2001, the Trustee filed a motion seeking a determination that the Pension Plan payment was property of the bankruptcy estate pursuant to § 541(a)(5)(B) of the Code, and an order compelling turnover of the Pension Plan payment to the Trustee. The Trustee also noted that the Debtor had not claimed an exemption as to the funds. On June 21, 2001, the Debtor filed an opposition to the Trustee's motion, arguing that her interest in her former husband's Pension Plan was not "property" subject to § 541(a)(5)(B), as it fell within § 541(c)(2)'s exclusion of property from the estate. Moreover, on the same day, the Debtor filed a motion to amend her Chapter 7 petition in order to include the anticipated Pension Plan payment and an exemption of her interest in the Pension Plan. The Debtor also filed certain amended schedules, including an amended Schedule B listing the Pension Plan payment as an asset, and an amended

---

**1.** There is no dispute that this is a qualified plan under the Employee Retirement Income Security Act of 1974 ("ERISA").

**2.** This is significant due to the fact that once funds from an ERISA-qualified account are

disbursed to a non-ERISA qualified account, they automatically lose their exempt nature and become property of the estate. *Johnston v. Mayer (In re Johnston)*, 218 B.R. 813, 817 (Bankr.E.D.Va.1998).

Schedule C claiming the Pension Plan payment as exempt pursuant to § 522(d)(10)(E) of the Code. The Trustee objected to the Debtor's amended exemption, arguing that (i) the estate and creditors were prejudiced by the late motion to amend schedules, (ii) the Pension Plan payment fell within the abut of § 541(a)(5)(B), and (iii) the exemption provision of § 522(d)(10)(E) did not apply to the "money payment" contemplated by the Separation Agreement.

## DECISION BELOW

Following a hearing on the matter, the Bankruptcy Court denied the Trustee's motion, finding that the $25,000 payment due and owing to the Debtor from her former husband's Pension Plan was excluded from the bankruptcy estate pursuant to § 541(c)(2) of the Code. In its analysis, the Bankruptcy Court focused on whether the Pension Plan funds were required to be transferred to an ERISA-qualified plan, thereby falling within the protection of § 541(c)(2). In considering this issue, the Bankruptcy Court examined the precise language of the QDRO and the Separation Agreement. The Bankruptcy Court noted that the language of the QDRO, which provided that "the alternative payee is hereby assigned $25,000 of the American Funds Pension Plan", was ambiguous as it was unclear whether the Probate Court intended to create a separate pension plan for the Debtor. The Bankruptcy Court concluded, however, that the ambiguity was cleared up by the Separation Agreement, which was incorporated and merged into the QDRO. The relevant section of the Separation Agreement provided: "Husband shall transfer the sum of $25,000 *to Wife's pension plan* by means of a Qualified Domestic Relations Order approved by the Court and attached hereto." Reading the QDRO and the Separation Agreement together, the Bankruptcy Court concluded that the Probate Court essentially took an ERISA-qualified plan, divided it and created a new ERISA plan for the Debtor. Therefore, the Probate Court intended the funds to remain in the ERISA account as a separate account of the Debtor or for the Debtor to roll it over into another retirement account. As a result, the Bankruptcy Court found that since the funds were intended to remain in an ERISA-qualified account, they fell within the ambit of § 541(c)(2)'s exclusion of property from the estate. Therefore, the Bankruptcy Court denied the Trustee's motion and overruled the Trustee's objection.[3]

## THE INSTANT APPEAL

The Trustee timely appeals the Bankruptcy Court's decision that the $25,000 payment due and owing the Debtor as an alternative payee under her former husband's Pension Plan does not constitute property of the Debtor's bankruptcy estate pursuant to § 541(a)(5)(B), as it is excluded from the estate pursuant to § 541(c)(2). The Trustee argues that the undistributed Pension Plan payment constitutes property of the Debtor's bankruptcy estate pursuant to § 541(a)(5)(B), and, therefore, is subject to turnover to the Trustee. The Debtor states that she is "cognizant of 11 U.S.C. § 541(a)(5)(B)" and admits that the divorce agreement became a final decree within the 180–day period specified in § 541(a)(5)(B). It is the Debtor's position,

---

**3.** Due to its finding that the Debtor's interest in the Pension Plan did not constitute property of the bankruptcy estate, the Bankruptcy Court was not required to determine whether such funds would be exempt under 11 U.S.C. § 522(10)(E) since property must first be property of the estate before it can be exempted. *See In re Miller,* 224 B.R. 913 (Bankr. D.N.D.1998).

however, that her interest in her former husband's Pension Plan is not "property" subject to § 541(a)(5)(B) as it falls within the protection of § 541(c)(2)'s exclusion of property from the estate. The Debtor argues that the QDRO evidences the parties' intent to transfer the $25,000 from one ERISA-qualified fund to another ERISA-qualified fund and, therefore, since the subject funds would be exempt as ERISA-qualified funds, they do not constitute property of the estate subject to § 541(a)(5)(B).

## STANDARD OF REVIEW

■ A bankruptcy court's conclusions of law are reviewed *de novo.* *See, e.g., Prebor v. Collins (In re I Don't Trust),* 143 F.3d 1, 3 (1st Cir.1998); *Brandt v. Repco Printers & Lithographics, Inc. (In re Healthco Int'l, Inc.),* 132 F.3d 104, 107 (1st Cir.1997). A determination as to whether an asset is property of the bankruptcy estate is a question of law. *Drewes v. Vote (In re Vote),* 276 F.3d 1024, 1026 (8th Cir.2002); *Nelson v. Ramette (In re Nelson),* 274 B.R. 789 (8th Cir. BAP 2002). Therefore, it is proper for this Panel to review the Bankruptcy Court's decision *de novo.*

## DISCUSSION

■ Pursuant to § 541(a)(1) of the Code, property of the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The scope of § 541 is broad and includes in the estate all kinds of property, including tangible and intangible property. *United States v. Whiting,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). Section 541(a)(5)(B) of the Code further provides as follows:

> Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the day of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree.

11 U.S.C. § 541(a)(5)(B).

■ However, despite the broad scope of § 541, the Code contains a number of exceptions to the general rule. For example, § 541(c)(2) of the Code provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2).

In *Patterson v. Shumate,* 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), the United States Supreme Court found that an anti-alienation provision contained in an ERISA-qualified pension plan constituted a restriction on transfer enforceable under "applicable nonbankruptcy law", and, therefore, a debtor could exclude his interest in such a plan from property of the bankruptcy estate pursuant to § 541(c)(2). In rendering its decision, the Court found that the text of § 541(c)(2) did not support the contention that "applicable nonbankruptcy law" was limited to state law. *Id.* at 758–59, 112 S.Ct. 2242. Examining the plain language of the provision, the Court found that § 541(c)(2) encompassed any relevant nonbankruptcy law, including federal law such as ERISA. *Id.* The Court next determined that the anti-alienation provision contained in the ERISA-qualified plan at issue satisfied the literal terms of § 541(c)(2). *Id.* at 759–61, 112 S.Ct. 2242. The anti-alienation clause required for ERISA qualification and contained in the retirement plan constituted an enforceable transfer restriction for purposes of § 541(c)(2)'s exclusion of property from

the bankruptcy estate. *Id.* at 760, 112 S.Ct. 2242. Therefore, the Court found that the debtor's interest in an ERISA-qualified pension plan could be excluded from property of the bankruptcy estate pursuant to the Code because "applicable nonbankruptcy law" was not limited to state law. *Id.* In reaching its conclusion, the Court sought to promote the public policy of ensuring that the treatment of pension benefits would not vary based upon the plan participant's bankruptcy status, and to give full effect to the goal of ERISA, which is to protect pensions earned by participants. *Id.* at 764–65, 112 S.Ct. 2242.

In the present case, the Trustee argues that the *Patterson v. Shumate* holding is not applicable to the present case because the Debtor's property interest emanated from the QDRO, rather than from the retirement plan itself. In support of this argument, the Trustee relies upon the holding of *In re Hageman*, 260 B.R. 852 (Bankr.S.D.Ohio 2001).

In *Hageman*, the debtor and her former spouse, during the course of their divorce proceeding, executed a Separation and Property Settlement Agreement which provided for, among other things, a distribution of $60,000 to be made to the debtor from her husband's retirement plan by way of a qualified domestic relations order. Seven months later, the debtor filed a voluntary Chapter 7 petition. In her amended schedules, the debtor disclosed her interest in her former spouse's retirement plan, but claimed that the anticipated distribution was exempt since it constituted an interest in a qualified plan under ERISA, a pension plan, annuity or individual retirement account under state law, or spousal support. The trustee objected to the exemption.

In its analysis, the *Hageman* court examined the *Patterson v. Shumate* holding,

finding that its purpose was to protect "plan participants". *Id.* at 856. The *Hageman* court found that the debtor was not a plan participant entitled to such protection. According to the court, the debtor obtained her property interest in her former husband's retirement plan pursuant to a QDRO which, by definition, created a property interest which was separate and distinct from the former spouse's plan interest. *Id.* at 857. Since the funds in the subject plan were derived from the debtor's former spouse's employment and it was his plan, the debtor was not a plan participant. Rather, the debtor was "a mere alternate payee pursuant to a QDRO who ha[d] the unfettered ability to obtain immediate payment without regard to the terms of the plan." *Id.* at 858. The *Hageman* court concluded, therefore, that because the debtor's property interest emanated from the QDRO, rather than from the retirement plan itself, the debtor could not exclude the $60,0000 from the estate based upon *Patterson v. Shumate.* *Id.* at 857.

Although the *Hageman* court attempted to distinguish the *Patterson v. Shumate* holding, the Bankruptcy Appellate Panel for the Eighth Circuit has recently extended the *Patterson v. Shumate* holding to the interest in an ERISA-qualified retirement plan that a debtor has acquired through a qualified domestic relations order pursuant to a marital dissolution proceeding. *See Nelson v. Ramette (In re Nelson)*, 274 B.R. 789 (8th Cir. BAP 2002). The facts of *Nelson* are similar to those in the present case.

In *Nelson*, during the course of divorce proceedings, the state court awarded the debtor an interest in the amount of $71,000 in his former wife's ERISA-qualified retirement plan. Two months later, the state court issued a qualified domestic relations order to effect the distribution to

the debtor from the retirement plan. Pursuant to the qualified domestic relations order, the debtor was made an alternate payee under his former wife's retirement plan, and was entitled to receive a lump sum distribution from the plan. The debtor subsequently filed a Chapter 7 petition, and claimed that the interest in the retirement plan was not property of the bankruptcy estate or, alternatively, that it was exempt under either § 522(d)(5) or § 522(d)(10)(E). Following a hearing, the bankruptcy court determined, among other things, that the debtor's interest in the retirement plan was property of the estate. The debtor appealed this ruling.

On appeal, the debtor argued that the bankruptcy court erred in ruling that benefits payable to an alternate payee from an ERISA-qualified plan are not excluded from the bankruptcy estate by operation of § 541(c)(2). The Bankruptcy Appellate Panel for the Eighth Circuit agreed. According to the panel, although there is a clear distinction between a plan participant and an alternate payee, that distinction is irrelevant as to the protections afforded by ERISA § 206(d)(1), which requires that all qualified plans must prevent the assignment or alienation of benefits provided under the plan. *Id.* Moreover, the purpose behind ERISA § 206(d)(1) is to protect the beneficial interest in an ERISA-qualified retirement plan, regardless of to whom that interest belongs, including an alternate payee who is considered a beneficiary. *Id.* According to the panel, because the debtor was a beneficiary of the ERISA-qualified plan, and because his beneficial interest was subject to the anti-alienation provisions of ERISA, the situation fell under the protective umbrella of *Patterson v. Shumate*. As a result, the panel extended the *Patterson v. Shumate* holding to the interest in an ERISA-qualified retirement plan that a debtor has acquired through a qualified domestic rela-

tions order pursuant to a marital dissolution proceedings. *Id.*

In so holding, the panel in *Nelson* respectfully disagreed with the ruling in *In re Hageman*, 260 B.R. 852 (Bankr. S.D.Ohio 2001), *supra*, relying on a more recent Supreme Court case, *Boggs v. Boggs*, 520 U.S. 833, 117 S.Ct. 1754, 138 L.Ed.2d 45, *reh'g denied*, 521 U.S. 1138, 118 S.Ct. 9, 138 L.Ed.2d 1043 (1997). According to the *Nelson* panel, the Supreme Court in *Boggs* very clearly stated that:

> In creating the QDRO mechanism Congress was careful to provide that the alternate payee, the "spouse, former spouse, child, or other dependent of a participant," is to be considered a plan beneficiary. §§ 1056(d)(3)(K), (J). These provisions are essential to one of REA's [Retirement Equity Act of 1984, Pub.L. 98–397, 98 Stat. 1426] central purposes, which is to give enhanced protection to the spouse and dependent children in the event of divorce or separation, and in the event of death the surviving spouse. Apart from these detailed provisions, ERISA does not confer beneficiary status on nonparticipants by reason of their marital or dependent status.

*Id.* (*citing Boggs*, 520 U.S. at 847, 117 S.Ct. 1754 (emphasis added)). The *Nelson* panel further noted that, according to the *Boggs* Court, "the QDRO provisions protect those persons who, often as a result of divorce, might not receive the benefits they otherwise would have had available during their retirement as a means of income. . . . The axis around which ERISA's protections revolve is the concepts of participant and beneficiary." *Id.* (*citing Boggs*, 520 U.S. at 854, 117 S.Ct. 1754). According to the *Nelson* panel, *Boggs* clearly stated that the beneficiaries under an ERISA-qualified retirement plan who are entitled to the protection of the anti-

alienation provision include a plan participant's ex-spouse who is made an alternate payee of the plan pursuant to a qualified domestic relations order. The *Nelson* panel concluded that, pursuant to ERISA and based on the Supreme Court's "highly-instructive *Boggs* opinion", the debtor's undistributed interest in his former spouse's ERISA-qualified retirement plan which he obtained pursuant to the qualified domestic relations order was not property of his bankruptcy estate. *Id.*

As set forth above, the *Nelson* panel found that beneficiaries under an ERISA-qualified retirement plan who are entitled to the protection of ERISA's anti-alienation provision include a plan participant's ex-spouse who is made an alternate payee of the plan pursuant to a qualified domestic relations order. In the present case, it is undisputed that the Debtor is an alternate payee of her former husband's plan pursuant to the QDRO. Therefore, under the *Nelson* holding, since the Debtor is a beneficiary in an ERISA-qualified plan, her interest is subject to the anti-alienation provisions of ERISA, and the situation falls under the protective umbrella of *Patterson v. Shumate.*

### CONCLUSION

In light of the foregoing, the Bankruptcy Court properly concluded that the Debtor's undistributed interest in her former husband's Pension Plan which she obtained pursuant to the QDRO is not property of her bankruptcy estate pursuant to § 541(c)(2) of the Code. Therefore, the decision of the Bankruptcy Court is AFFIRMED.