**IN the MATTER OF: Willie Paul UPSHAW Eartha Ruth Upshaw, Debtors.**

**CASE NUMBER 12–13235–WHD**

United States Bankruptcy Court, N.D. Georgia, Newnan Division.

Signed November 4, 2015

D. Scott McPherson, McPherson & Associates, Sparta, GA, for Debtors.

## ORDER

W. Homer Drake, U.S. Bankruptcy Court Judge

Before the Court is the Objection to Claim of Exemption, filed by Griffin Howell, III (hereinafter the "Trustee") in his capacity as the Chapter 7 Trustee of the bankruptcy estate of Eartha Ruth Upshaw (hereinafter the "Debtor"). This matter constitutes a core proceeding, over which this Court has subject matter jurisdiction. *See* 28 U.S.C. § 157(b)(2)(B); § 1334.

### FINDINGS OF FACT

On November 9, 2012 (hereinafter the "Petition Date"), the Debtor and her husband (hereinafter "Upshaw") filed a voluntary petition for relief under Chapter 7 of United States Bankruptcy Code.[1] *Stipulation of Facts with Respect to Trustee's Objection to Claim of Exemption*, Doc. No. 50 (hereinafter "Stipulation"), ¶ 1. The Trustee is the duly and proper appointed Chapter 7 Trustee of the Debtor's bankruptcy estate. *Id.* ¶ 2.

Upon the death of the Debtor's uncle, Ernest B. Coleman (hereinafter "Coleman"), the Debtor was the beneficiary of Coleman's right to receive pension payments from the Teacher's Retirement Association of Minnesota (hereinafter the "TRAM"). *Id.* ¶¶ 3–4. While the Debtor disclosed on her Schedule I $2,100 of "Pension or retirement income," the Debtor actually receives no less than $2,298.21 per month in payments from the TRAM (hereinafter the "Payments"), and has continued to receive the Payments since the Petition Date. *Id.* ¶¶ 5–7.

The terms of the TRAM plan are embodied in Minnesota Statutes, Chapters 11A, 354, 356, 356A, and 356B, and there is no independent plan document. *Id.* ¶ 15.[2] The Debtor has no control or direction, whatsoever, over the TRAM plan or how and when benefits are paid under the TRAM plan, and the Payments will terminate upon the Debtor's death, at which time, no further benefits from the TRAM will be paid to any party. *Id.* ¶ 16. The Debtor did not contribute to, invest in, or otherwise fund the Payments received by her from the TRAM. *Id.* ¶ 8. The TRAM's obligation to make the Payments to the Debtor is irrespective of her age or retirement status. *Id.* ¶ 9.

In their originally filed Statement of Financial Affairs (Doc. No. 1), the Debtor and Upshaw disclosed income received in 2010 of $46,292, income received in 2011 of $47,666, and income received in 2012 of $60,000. *Id.* ¶ 10.[3] Although the Debtor did not claim her interest in the Payments as exempt property on her originally filed Schedule C, once the Trustee filed an adversary proceeding seeking turnover of the Payments, the Debtor amended her Schedule C to claim a "Teacher's Pension" as exempt under Georgia statutory exemptions. *Id.* ¶ 11–12. In her amended

---

**1.** 11 U.S.C. § 101, et seq.

**2.** Although the parties have stipulated to the fact that there is no independent plan document, M.S.A. § 356A.01, Subd. 21 defines the term "Plan document" to mean "a written document or series of documents containing the eligibility requirements and entitlement provisions constituting the benefit coverage of a pension plan, including any articles of incorporation, bylaws, governing body rules and policies, municipal charter provisions, municipal ordinance provisions, or general or special state law." Accordingly, there may, in fact, be a plan document that covers the TRAM. It is possible that the "plan document" is the handbook provided by the Debtor with her brief.

**3.** The Debtor and Upshaw filed an amendment to their Statement of Financial Affairs on August 5, 2015, in which they restated the amount and source of their income to reflect the Payments as "pension income." Stipulation, ¶ 17.

Schedule C, the Debtor stated that the pension is "a monthly retirement benefit ... she continues to receive so long as she continues to age"; that the Debtor is dependent upon "this pension for basic living expenses"; and that "upon death the pension terminates with no residual value or asset remaining." *Id.* ¶ 13. On June 9, 2015, the Trustee filed the instant objection to the Debtor's claim that her interest in the Payments is exempt property.

### CONCLUSIONS OF LAW

The Debtor asserts that either: (1) her interest in the Payments is excluded from the bankruptcy estate by section 541(c)(2) of the Bankruptcy Code; or, (2) if it is not excluded, it is exempt under O.C.G.A. § 44–13–100(a)(2)(E), (a)(2.1)(B), and (a)(2.1)(C), and O.C.G.A. § 18–4–22. As the Court has determined that the Debtor's interest in the TRAM is not property of the Debtor's bankruptcy estate, the Court need not address the question of whether the Debtor may exempt it.

Under section 541(a) of the Bankruptcy Code, property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case...." 11 U.S.C. § 541(a). "The sweep of this section is quite broad, encompassing [a]ll property interests of the Debtor, with narrow exceptions defined in section 541." *In re Mack,* 269 B.R. 392, 398 (Bankr.D.Minn.2001). The Debtor's interest in the TRAM "is clearly a property interest encompassed by the broad scope of section 541(a)." *Id.*

■ Section 541(c)(2) of the Bankruptcy Code, however, excludes from property of the estate a debtor's beneficial interest in a trust that contains a "restriction on transfer" that is "enforceable under applicable nonbankruptcy law." 11 U.S.C. § 541(c)(2). "To determine if property is excluded from the estate pursuant to § 541(c)(2), the Court must conduct a

three-part analysis": (1) the debtor must have a beneficial interest in a trust; (2) there must be a restriction on the transfer of that interest; and (3) the restriction must be enforceable under either federal or state law. *In re Hainlen,* 365 B.R. 288, 290 (Bankr.S.D.Ga.2007) (citing *In re Wilcox,* 233 F.3d 899, 904 (6th Cir.2000)). Restrictions on transfer are not limited to those "enforceable only under state spendthrift trust law." *Patterson v. Shumate,* 504 U.S. 753, 760, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992); *Mack,* 269 B.R. at 398–99 (noting that there are "three scenarios under which the restrictions in [a trust] could remove Debtor's interest in the [trust] from the bankruptcy estate: 1) if Minnesota state common law would enforce this provision; 2) if the Internal Revenue Code or regulations promulgated thereunder mandate the inalienability of Debtor's life income interest, or 3) if a Minnesota statute so mandates"); *In re Mueller,* 256 B.R. 445, 459 (Bankr.D.Md. 2000).

■ First, the Court must determine whether the TRAM is a trust. Courts look to state law to determine whether a debtor has an interest in a "trust" within the meaning of section 541(c)(2). *In re Laher,* 496 F.3d 279, 288 (3d Cir.2007); *In re Gnadt,* 2015 WL 2194475, at *7 (Bankr. E.D.Va. May 7, 2015). The parties have stipulated that the TRAM plan is established by Minnesota Statutes Chapters 11A, 354, 356, 356A, and 356B. Accordingly, the Court will look to Minnesota law to determine whether the TRAM is a trust.

■ "Under Minnesota common law, the essentials of an express trust are (1) a designated trustee with enforceable duties; (2) a designated beneficiary vested with enforceable rights; and (3) a definite trust res in which the trustee has legal title and the beneficiary has the beneficial interest."

*Bond v. Comm'r of Revenue,* 691 N.W.2d 831, 837 (Minn.2005) (citing *In re Bren,* 284 B.R. 681, 697 (Bankr.D.Minn.2002)). Further, a "trust is created only if the settlor demonstrates, by external expression, the intent to create a trust." *Id.* (citing *In re Bush's Trust,* 249 Minn. 36, 42–43, 81 N.W.2d 615, 619–20 (1957)).

■ According to the TRAM's handbook, the TRAM is a 501(a) Trust and a "qualified plan" under sections 401(a) and 414 of the Internal Revenue Code. To be so qualified, the TRAM must be "[a] trust created or organized in the United States and forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries." 26 U.S.C. § 401(a). The TRAM's characterization of itself as a trust is consistent with the Minnesota requirements for a trust, as contributions from the employee and the employer are held in the TRAM and invested under the authority of a board of trustees with specified fiduciary duties, and the income from the contributions are used to pay benefits to the covered employees or their beneficiaries. *See* M.S.A. § 354.06 Subd. 1 ("[M]anagement of the [TRAM] is vested in a board of eight trustees...."); M.S.A. §§ 354.06 Subd. 1a, 356A (fiduciary duties of the board of trustees); M.S.A. 356A.06 ("Legal title to plan assets must be vested in the plan ..." and the "holder of legal title shall function as a trustee for a person or entity with a beneficial interest in the assets of the plan."); M.S.A. § 356.63 ("Money held by or credited to a public pension plan as assets, including employer and employee contributions ... and accrued earnings on investments, constitutes a dedicated fund."). Therefore, the Court concludes that the TRAM is a trust.

■ Next, the Court must determine whether the Debtor's interest in the TRAM is subject to a transfer restriction that is enforceable under nonbankruptcy law. As noted above, to qualify under section 541(c)(2), a restriction need not be one that would be enforceable under state "spendthrift law." Indeed, in resolving a split among the circuit courts, the United States Supreme Court in *Patterson v. Shumate,* 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), held that the debtor's interest in a pension plan was excluded from property of the bankruptcy estate because the retirement plan included a restriction on the transfer of the debtor's interest and that restriction was enforceable under the remedies provided by ERISA. The Court rejected the argument that Congress intended section 541(c)(2) to apply only to transfer restrictions that would be enforceable under state "spendthrift trust" law. *Id.* at 758–59, 112 S.Ct. 2242. Rather, the Court relied on the fact that ERISA imposed on the trustees of the retirement plan fiduciary obligations to prevent any transfer of the debtor's interest contrary to the plan terms and the ability of the debtor, his beneficiary, or the Secretary of Labor to file suit under ERISA's enforcement provisions to enjoin any such transfer. *Id.* at 759–60, 112 S.Ct. 2242. Accordingly, the fact that the pension plan may not have been recognized under state law as a "spendthrift trust" due to the self-settled nature of the trust did not bar the application of section 541(c)(2). *Id.* at 759, 112 S.Ct. 2242.

Here, the TRAM contains a provision under which "[n]one of the money, annuities, or other benefits provided for in the governing law of a covered retirement plan is assignable either in law or in equity or subject to state estate tax, or to execution, levy, attachment, garnishment, or other legal process, except as provided in subdivision 2 or section 518.58, 518.581, or 518A.53. M.S.A. § 356.401 Subd. 1 & Subd. 3(11) (including the TRAM as a "covered

retirement plan" for purposes of the anti-alienation provision). This restriction on the voluntary or involuntary transfer of a beneficial interest in the TRAM is provided by state statute and is, therefore, enforceable under nonbankruptcy law.[4] *See Wilcox,* 233 F.3d at 901 (holding that the debtor's beneficial interest in a municipal employees' retirement plan was excluded from the debtor's bankruptcy estate because the terms of the plan were effectively incorporated into the city charter and provided that the debtor's interest was unassignable and not subject to execution, attachment, or the operation of bankruptcy law); *see also In re Silviera,* 186 B.R. 168, 172 & n. 4 (Bankr.D.Mass.1995) (finding that a public pension plan which statutorily restricted the alienation of interests held by participants was enforceable under Massachusetts law despite the absence of the "express enforcement procedures available in ERISA" because Massachusetts courts have entertained motions to discharge attachments that violate the anti-alienation statute); *In re Domina,* 274 B.R. 829, 833 (Bankr.N.D.Iowa 2002) (holding that the Chapter 7 debtor's interest in an Iowa deferred compensation plan was excluded under section 541(c)(2) because it was subject to statutory anti-alienation provisions).

Just as the administrators of the plan at issue in *Patterson,* the trustees of the TRAM have a fiduciary obligation to comply with the anti-alienation statute. *See* M.S.A. § 356A.05(b) ("The activities of fiduciaries identified in section 356A.02 must be carried out faithfully, without prejudice, and in a manner consistent with law and the plan document."). Although the TRAM does not appear to have its own built-in enforcement provisions, similar to those ERISA provisions relied upon by the Court in *Patterson,* surely a member or beneficiary of the TRAM could raise M.S.A. § 356.401 as a defense in any proceeding seeking to levy against or garnish an interest in the TRAM, and such a right should be sufficient to render this transfer restriction enforceable under nonbankruptcy law. *Accord In re Meehan,* 102 F.3d 1209, 1213 (11th Cir.1997) (holding that Georgia's statute prohibiting garnishment of an individual retirement account constitutes a restriction on the transfer of a debtor's interest in the account, sufficient to exclude the interest under section 541(c)(2)).

The Trustee does not assert otherwise. He does, however, argue that the *Debtor's* interest in the TRAM should not be excluded from the estate because the Debtor was not a participant in and did not contribute funds to the TRAM. The distinction urged by the Trustee, however, is not supported by the plain language of M.S.A. § 356.401, section 541(c)(2), or the Supreme Court's interpretation of section 541(c)(2) in *Patterson.*

First, there is no basis to conclude that Minnesota law restricts the anti-alienation provision of the TRAM to interests of members or participants, or otherwise would allow the garnishment or assign-

---

4. The Eighth Circuit Court of Appeals previously held that section 541(c)(2) did not apply to a Chapter 7 debtor's interest in the TRAM because section 541(c)(2) applies only to a debtor's beneficial interest in a trust that constitutes a true "spendthrift trust" under state law. *See In re Swanson,* 873 F.2d 1121 (8th Cir.1989). As the Trustee noted in his brief and as the Court addressed above, however, the reasoning and holding of *Swanson* was rejected in *Patterson v. Shumate,* 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). Subsequently, courts, including the Eight Circuit Court of Appeals, have recognized that the Supreme Court "clearly indicated that state law other than spendthrift trust law can serve as 'enforceable nonbankruptcy law' under § 541(c)(2)." *Wilcox,* 233 F.3d at 904; *see also Whetzal v. Alderson,* 32 F.3d 1302 (8th Cir.1994).

ment of the interest of a designated beneficiary. The statute simply prohibits the assignment or execution, levy; attachment, or garnishment of "money, annuities, or other benefits provided for in the governing law of a covered retirement plan." The TRAM is a "covered plan" for this purpose, *see* M.S.A. 356.401 Subd. 1 & Subd. 3(11), and "annuity" includes the "optional survivors annuity" that would be payable based upon a member's designation under the "optional annuity form," *see* M.S.A. §§ 354.05, Subd. 17 & 19. By using the broad terms "annuities" and "other benefits," the statute exhibits an intention to provide broad coverage for all interests payable over time by the TRAM, perhaps in part to protect the State's interest in maintaining the integrity of the plan. *Accord In re Estate of Fink,* 425 N.W.2d 600, 602 (Minn.Ct.App.1988) ("It is not hard to imagine the burden which would be thrust upon those who administer the teacher retirement fund if that fund, and others like it, were not exempt from assignment, attachment or process. We believe it was this concern which prompted the legislature to enact Minn.Stat. § 354.10.").

Second, the plain language of section 541(c)(2) imposes no requirement that the funds being held in a trust on behalf of the debtor be the debtor's retirement savings or any other particular type of fund. In *Patterson,* the Court specifically relied upon the plain language of section 541(c)(2) to reject any notion that "nonbankruptcy law" was restricted to state "spendthrift" trust law. Although the Court acknowledged that its holding gave "full and appropriate effect to ERISA's goal of protecting pension benefits," the Court based its decision on the statute's plain language. *Patterson,* 504 U.S. at 764, 112 S.Ct. 2242. The Court found that the plain language of the statute was unambiguous and that it did not require an evaluation of the legislative intent or "policy considerations." *Id.*

The Court's holding did not depend upon the fact that the funds at issue were retirement savings or that the purpose of the statute under which the restriction was enforceable was to protect retirement savings. Accordingly, section 541(c)(2) should apply as long as the Court can identify a statute, such as M.S.A. § 356.401, that restricts the voluntary and involuntary transfer of the debtor's beneficial interest in a trust, and under which the debtor could seek enforcement of such a restriction.

In support of his position, the Trustee relies on several decisions, which he characterizes as having "determined that restrictions on assignability of pension plans do not exclude interests in those plans from property of the estate when the interest is not that of the original beneficiary." Trustee's Brief, at 8–9. All of these cases address a debtor's interest in an ERISA-qualified plan under circumstances factually distinct from those at issue here.

For example, the Trustee cites *In re Woodyear,* 162 F.3d 1160, 1998 WL 792733 at *1 (5th Cir.1998), in which the debtor became entitled to the immediate distribution of her ex-husband's employee savings plan within 180 days of the filing of her Chapter 7 bankruptcy petition. The court rejected the debtor's argument that her interest in the plan funds was excluded under section 541(c)(2) because her ex-husband's interest had been protected from alienation by ERISA. The basis for the holding, however, was not that she was not the employee who had saved for her own retirement, but rather that she had "gained unrestricted access to funds in an ERISA-qualified plan within" 180 days after the petition date due to her divorce and, accordingly, since the funds were no longer subject to the "anti-restriction clause of ERISA," they became property of the estate under section 541(a)(5)(B).

*Id.* Here, no one has asserted that the Debtor has gained unrestricted access to her interest in the TRAM, and there is no basis to conclude that the transfer restrictions applicable under Minnesota law were not applicable to the Debtor's beneficial interest in the TRAM at the time of her bankruptcy filing.

Several of the other cases relied upon by the Trustee also consider funds payable to a debtor from an ERISA-qualified plan as the result of a divorce. *See, e.g., In re Burgeson,* 504 B.R. 800 (Bankr.W.D.Pa. 2014); *In re Hageman,* 260 B.R. 852 (Bankr.S.D.Ohio 2001). Again, in these cases, the court held that the debtor's interest in a former spouse's retirement savings became property of the debtor's bankruptcy estate because the "property interest [did] not emanate from the retirement plan itself, but from" a qualified domestic relations order and because the debtor was "a mere alternate payee pursuant to a QDRO who ha[d] the unfettered ability to obtain immediate payment without regard to the terms of the plan." *Hageman,* 260 B.R. at 857–58. In these cases, the funds at issue were no longer subject to ERISA's anti-alienation restriction in the debtor's hands and were, therefore, not excludible under the plain language of section 541(c)(2). Indeed, the court in *Burgeson* explained that ERISA's anti-alienation restrictions did not apply to the funds obtained by a former spouse pursuant to a QDRO because the former spouse was never a participant of the plan *or a beneficiary.* The *Burgeson* court suggested that the ERISA anti-alienation restrictions may have applied had the debtor been a designated beneficiary entitled to receive a benefit under the pension, as opposed to being entitled to receive the benefit because of the QDRO. *Id.* at 804. Alternatively, had the debtor obtained the QDRO prior to filing bankruptcy, the court may have held that the QDRO enti-

tled the Debtor to beneficiary status, in which case the anti-alienation protections of ERISA would have applied. *Id.* (citing *Boggs v. Boggs,* 520 U.S. 833, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997)).

The only case relied upon by the Trustee that does not involve an interest obtained in a pension plan by a former spouse is *In re Lacefield,* 2:03–bk–22470 (Bankr.D.Ariz. July 20, 2004). In *Lacefield,* the debtor had inherited an interest in her mother's retirement plan. Again, the court concluded that section 541(c)(2) did not exclude that interest because the ERISA anti-transfer restriction no longer applied to the funds in the plan in the debtor's hands. Again, such a determination necessarily depends on the terms of the plan and the applicable law under which a transfer restriction would be enforceable. The holding of *Lacefield* does not require or support a similar conclusion when the pension plan's terms do not give unfettered access to the death beneficiary and nonbankruptcy law continues to protect the debtor's interest from execution by creditors. Here, as the Debtor had no right to accelerate the Payments and Minnesota law continued to protect the Debtor's interest in the TRAM from execution by creditors, the holding of *Lacefield* does not apply to this case.

Rather than the cases cited by the Trustee, the Court finds Judge Barrett's decision in *In re Hainlen,* 365 B.R. 288 (Bankr.S.D.Ga.2007), to be more on point and persuasive. In *Hainlen,* the debtor asserted that the payments she received monthly from the Teachers Retirement System of Georgia, as the survivor beneficiary of her deceased father, were excluded from her Chapter 7 estate. *Id.* at 291. The debtor had opted to receive monthly payments for her life. Just as here, the debtor had no control over or ability to accelerate the payments. *Id.* After con-

cluding that the Georgia plan was a trust that included restrictions on transfer that were enforceable under nonbankruptcy law, the court rejected the trustee's argument that section 541(c)(2) should not apply because the debtor had inherited her interest in the plan, noting that "nowhere in the statute is there a requirement that Debtor's interest emanate from a retirement plan based upon her own employment, or that she be a dependent of a plan participant." *Id.* at 292.

Although *Hainlen* dealt with Georgia law, the Georgia plan and statute are similar to the TRAM and the Minnesota statute at issue here. Judge Barrett's conclusion is consistent with the plain language of section 541(c)(2), which requires only the existence of an enforceable transfer restriction. The Trustee asserts that allowing the Debtor to protect her interest in the TRAM is a "windfall" to the Debtor because she did not set aside the funds for her retirement, but section 541(c)(2) permits such a result, as it does not require that funds be retirement funds or even that they be necessary for a debtor's support. All that section 541(c)(2) requires is that the funds be protected from transfer under nonbankruptcy law. The Debtor has made a sufficient showing that this is the case here, as her beneficial interest in the TRAM is subject to an anti-alienation provision, even though she did not contribute funds to the TRAM.

CONCLUSION

For the reasons stated above, the Court finds that the Trustee's objection to the Debtor's exemption should be, and hereby, is, **DENIED** as moot, as the property the Debtor seeks to exempt is not property of her bankruptcy estate.

**IT IS ORDERED.**